## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ANTONIO DEVON MAY, | ) | |
| by and through his Administrator, | ) | |
| APRIL M. MYRICK, APRIL M. MYRICK, | ) | |
| Legal Guardian of ZA'KOBE K. RICKERSON, | ) | |
| a minor, and JORDAN I. RICKERSON, a minor, | ) | |
| SHEENA PETTIGREW, Mother and | ) | |
| Natural Guardian of ELIJAH PETTIGREW, | ) | |
| a minor. | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | |
| | ) | |
| FULTON COUNTY, GEORGIA, | ) | **JURY TRIAL DEMANDED** |
| SHERIFF THEODORE JACKSON, | ) | |
| in his official and individual capacities, | ) | |
| SERGEANT JOHN DOE, in his official and | ) | |
| individual capacities, JOHN DOE DEPUTIES, | ) | |
| individually, NAPHCARE, INC., | ) | |
| Travis Williams, EMT, individually | ) | |
| & AXON ENTERPRISE, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs, and make and file this Complaint against Defendants for violating the laws of the United States and the State of Georgia, thereby proximately causing the excruciating pre-death pain and suffering and the wrongful death of Antonio Devon May, on September 11, 2018, at the Fulton County, Georgia Jail in Atlanta, Georgia.

## PARTIES AND JURISDICTION

1.

Plaintiff April M. Myrick, the Administrator of the Estate of Antonio May, resides in the State of Georgia, and is subject to the jurisdiction of this court.

2.

Plaintiff April Myrick, the legal guardian of Za'Kobe K. Rickerson and Jordan I. Rickerson, minor children of Antonio May, resides in the State of Georgia, and is subject to the jurisdiction of this court.

3.

Plaintiff Sheena Pettigrew, the mother and natural guardian of Elijah Pettigrew, minor son of Antonio May, resides in the State of Georgia, and is subject to the jurisdiction of this court.

4.

Defendant Fulton County, Georgia is within the State of Georgia and is responsible for the funding and operation of the Fulton County, Georgia Jail. Defendant Fulton County, Georgia may be served with process through Robb Pitts, Fulton County Commission Chairman at 141 Pryor Street SW10th Floor Atlanta, Georgia 30303, and is subject to the jurisdiction of this court.

5.

Defendant Fulton County Sheriff Theodore Jackson (hereinafter referred to as "Sheriff") is responsible for the supervision, maintenance and operation of the Fulton County Jail and may be served with process at 185 Central Ave. S.W. Atlanta, Georgia 30303, and is subject to the jurisdiction of this court.

6.

Defendant John Does are the unknown and unidentified individuals or entities who injured and caused the death of Antonio May, under the color of law, were deliberately indifferent to his needs and violated his constitutional rights.

7.

On October 3, 2018, Plaintiffs gave ante litem notice to Fulton County and Sheriff Theodore Jackson, and Plaintiffs have complied with all conditions precedent to bringing this action. (A copy of the ante litem notice is attached as Exhibit "A.")

8.

Defendants above have waived any defense of sovereign immunity by the purchase of liability insurance or otherwise.

9.

Defendant Naphcare, Inc. is the private inmate medical care contractor for the Fulton County Jail, and may be served with process to its registered agent at 900 Old Roswell Lakes Pkwy Suite 310, Roswell, GA, 30076, and is subject to the jurisdiction of this court.

.

10.

Defendant Travis Williams is an Emergency Medical Technician ("EMT") employed by Naphcare, Inc., and is subject to the jurisdiction of this court.

11.

Defendant Axon, Inc. is a Delaware Corporation with its principal place of Business in Scottsdale, Arizona, and licensed to do business in the State of Georgia and through its agents, servants and employees and in the ordinary course of business, designed, manufactured, sold, distributed, fabricated, assembled, bought, inspected, tested, serviced, marketed, warranted, and advertised Conducted Electrical Devices ("CED), commonly known as TASER weapons to the Fulton County Jail, and may be served with process to its registered agent at 40 Technology Parkway South, Suite 300, Norcross, GA 30092, and is subject to the jurisdiction of this court.

12.

Jurisdiction and venue are proper in this court.

## **BACKGROUND**

13.

Prior to September 11, 2018, Antonio May was a gainfully employed devoted father of three boys, Za'Kobe Rickerson, Jordan Rickerson and Elijah Pettigrew.

14.

Despite his overall positive and happy demeanor, prior to September 11, 2018, Antonio May struggled with mental health and substance abuse issues, and he was receiving substance abuse treatment and mental health counseling.

15.

Prior to September 11, 2018, Antonio May lived with his beloved uncle Bradley Bryant, Jr. before Mr. Bryant passed away due to complications from cancer.

16.

On September 11, 2018, Antonio May was having a mental health crises and was on amphetamines when he went to the American Cancer Society ("ACS") in Atlanta, Georgia and threw rocks at the windows at ACS.

17.

ACS security called the Atlanta Police Department ("APD") and reported that Mr. May was throwing rocks at its windows.

18.

When APD officers arrived, Mr. May laid down on the ground with his arms stretched out, and he was arrested peacefully.

19.

APD officers took Mr. May to Grady Hospital for medical clearance.

20.

At Grady Hospital, Mr. May was paranoid, tested positive for amphetamines and was diagnosed with Substance Abuse Psychotic Disorder.

21.

Grady Hospital released Mr. May to the Fulton County Jail, so Mr. May could be in a "structured environment and likely to be of the most benefit for him given his current meth intoxication"

22.

On the morning of September 11, 2011 at around 8:58 am Mr. May was booked into the Fulton County jail on charges of misdemeanor criminal trespass.

23.

When Mr. May arrived at the Fulton Jail he underwent medical screening by Travis Williams, an EMT with Naphcare, Inc.

24.

Travis Williams noted that Mr. May tested positive for amphetamines and that he was suicidal.

25.

As opposed to putting Mr. May in the Special Medical Observation Unit at the Fulton County Jail and giving him detoxifying chemical sedation, due to his mental health issues and due to him testing positive for amphetamines, the medical

professionals at Naphcare, Inc. released Mr. May to the Jail deputies to place Mr.
May in a general holding cell.

26.

After Mr. May was placed in the holding cell, Jail deputies were overheard
by employees and inmates shouting that is was "Taser Tuesday."

27.

While in the holding cell, suicidal and on amphetamines, Mr. May removed
his clothing and began masturbating.

28.

Due to Mr. May masturbating in the holding cell a decision was made by a
supervisor at the Jail to have the DART (Direct Action Response Team) comprised
of Six (6) deputies to enter Mr. May's cell and confront him.

29.

At least one of the deputies on the DART team tased Mr. May immediately
upon entering his holding cell without warning.

30.

A confrontation ensued between Mr. May and the DART deputies in the
holding cell.

31.

The six (6) deputies tased Mr. May repeatedly, put a stun gun on his body on at least two separate places, beat him with closed fist strikes and sprayed pepper spray in his face.

32.

The deputies then placed Mr. May in a restraining chair, placed a spit mask on his face and head and placed him in the in the shower area for decontamination.

33.

When the water from the shower did not remove all of the pepper spray the deputies put a water hose to Mr. May's face while he was restrained in the chair.

34.

Minutes after he was decontaminated, Mr. May went unresponsive and died on the floor of the Fulton County Jail laying in a pool of his own blood.

35.

As a direct, proximate, and foreseeable result of the negligent acts and omissions of the Fulton County Jail and Naphcare, Inc., and/or their agents, servants, and employees, in their medical negligence, deliberate indifference, closed fist strikes, excessive force and usage of the tasers and pepper spray, as complained of herein, Mr. May suffered excruciating mental and emotional pain up to the time of his tragic death.

## COUNT 1:

## Negligence, Gross Negligence, and Wrongful Death Against All Defendants

36.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint.

37.

Mr. May suffered from mental disability and substance abuse, and therefor was protected under Federal Law and state law.

38.

Defendants owed Mr. May a duty to:

A.    Use no more force than reasonably necessary;

B.    Protect him from harm because of his mental illness and substance abuse; and

C.    Use the taser only when necessary and appropriate with due regard to safety.

39.

Defendants violated their duty by using excessive force, failing to protect Mr. May from harm because of mental illness and substance abuse, and using the taser in an unnecessary and inappropriate circumstance and manner in the following ways:

A.      Failing to prohibit deputies from utilizing tasers repeatedly on a single subject;

B.      Failing to expressly and specifically prohibit deputies from deploying their tasers in unsafe ways, with certain and specific limits on amounts, durations, and locations of charges permitted to be deployed on a given person in accordance with accepted standards for safe use of the tasers;

C.      Failing to prohibit the shooting of tasers in the upper torso area;

D.      Prohibit deputies from deploying tasers in attempts to control people suffering from a psychotic break more than two times, even if the use of the taser does not successfully subdue the Impaired Person; and

E.      Specifically limit the use of tasers in combination with other uses of force, including pepper spray and closed fist strikes.

40.

Mr. May's death was caused by the negligent actions of the Defendant deputies. The actions of the Defendant deputies in causing Mr. May's death were grossly negligent, malicious, wanton, willful, and/or done with reckless disregard for the rights of others.

41.

The actions of the Defendant deputies occurred in the course and scope of their employment and are imputed to their employer, the Sheriff Theodore Jackson, under the doctrine of *respondeat superior*.

42.

The Fulton County Jail, acting by and through its agents, including the deputies, was negligent in its actions on September 11, 2018.  The acts of the deputies are imputed to the Fulton County Jail under the doctrine of *respondeat superior*.

43.

The violations of generally accepted law enforcement custom and practice in this situation and the wrongful death of Mr. May were the direct and foreseeable results of negligent hiring and retention, grossly inadequate supervisory and training policies and practices on the part of the Fulton County Jail.

44.

Defendant Fulton County Jail failed to train their employees on how to properly restrain a mentally disturbed person, how to properly use a taser, the circumstances warranting use of a taser and various other restraint and arrest techniques.

45.

The negligence and gross negligence of the Defendants entitle the Plaintiffs to recover compensatory damages for the pain and suffering incurred by the decedent Mr. May after being beaten and tasered to his death.

46.

The estate of Antonio May is entitled to recover from the Defendants all damages allowed including but not limited to medical and funeral expenses, pain and suffering, loss of services, protection, care, assistance, society, companionship, comfort, guidance, kindly offices and advice, among other things.

47.

All Defendants acted with malicious, deliberate, willful, wanton and reckless disregard of the rights and privileges of Mr. May, entitling Plaintiffs to recover punitive damages.

## COUNT II:

## Action Pursuant to 42 USC § 1983 as against John Doe Defendants For Excessive Force

48.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint.

49.

As specifically alleged above, John Doe Defendants actions, considering their knowledge and lack of knowledge of the circumstances, used an unreasonable, unnecessary high or dangerous level of force to subdue and/or control Mr. May, and in using more or improperly dangerous force than reasonably necessary, acted in contravention of accepted law enforcement standards related to the use of force in gaining control over unarmed individuals.

50.

In inflicting greater force than reasonably necessary to control or subdue Mr. May, John Doe Defendants acted with deliberate indifference to Mr. May's Fourth Amendment Right to be free from unreasonable seizure of his person, and his Fourteenth Amendment right to substantive due process precedent to the imposition of punishment or death in response to suspected criminal activity.

These rights will collectively be referred to as "Fourth and Fourteenth Amendment Rights."

51.

John Doe Defendants are not entitled to qualified immunity for the constitutional violations alleged herein, due to the fact that no reasonable officer, acting in the circumstances and with the knowledge or lack of knowledge of  John Doe Defendants as set forth above, would have inflicted the same type, quantity and level of force upon Mr. May as inflicted on Mr. May by John Doe Defendants.

52.

John Doe Defendants' excessive use of force and corresponding deliberate indifference to Mr. May's Fourth and Fourteenth Amendment Rights, proximately caused Mr. May's death and Plaintiffs' damages.

53.

Accordingly, The Estate of Antonio May is entitled to recover compensatory damages, punitive damages, and all other damages allowed under law.

## **COUNT III:**

## **Action Pursuant to 42 USC § 1983 as against Defendant Fulton County, GA and Theodore Jackson, Fulton County Sheriff for Failure to Properly Train**

54.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint.

55.

Fulton County and Sheriff Jackson were negligent in that they failed to establish reasonable procedures, including the training of officers in methods, techniques, and approaches designed to prevent the excessive use of force in responding to situations involving emotionally or mentally disturbed and/or restrained individuals.

56.

Moreover, the violations of the generally accepted law enforcement custom and practice in this situation and the wrongful death of Mr. May were direct and foreseeable results of grossly inadequate supervisory and training policies and practices on the part of Fulton County and Sheriff Jackson. Fulton County and Sheriff Jackson failed to train their employees on how to properly restrain a mentally disturbed person, or how to properly use a taser, the circumstances warranting use of a taser and various other restraint and arrest techniques.

57.

Defendants Fulton County and Sheriff Jackson through the acts and omissions of its employees and John Doe Defendants acted with deliberate indifference to Mr. May without a sense of reality and/or with an impaired ability to control his behavior ("Impaired Person").

58.

These actions of said Defendants were pursuant to a Fulton County policy and custom and Fulton County Jail policy and procedure and were calculated to and did deprive Mr. May of rights and privileges protected by state and federal law, including 42 USC § 1983.

59.

Said Defendants acted with deliberate indifference to Impaired Persons' Fourth and Fourteenth Amendment Rights by failing to train the police officers in the following ways:

    A.    Defendants failed to adequately hire, supervise and retain their deputies;

    B.    Defendants failed to adequately train their deputies to employ safe, reasonable and necessary techniques designed to prevent the encounter with Antonio May from becoming volatile or dangerous to the deputies and Mr. May.

    C.    Defendants failed to adequately train their deputies to employ safe, reasonable and necessary techniques designed to prevent encounters with Impaired Persons who are or become volatile, violent or dangerous to the deputies and to Mr. May; and

    D.    Defendants failed to adequately train their deputies in the safe, reasonable, effective, and appropriate modalities and measures of force to be used upon Impaired Persons.

60.

Said Defendants acted with deliberate indifference to the Fourth and Fourteenth Amendment Rights of Impaired Persons in their failure to train as alleged above.

61.

Said Defendants' deliberate indifference to the Fourth and Fourteenth Amendment Rights of Impaired Persons through their failure or failures to train as alleged above are failures of policy, widespread practice, and/or custom.

62.

Said Defendants' systematic training failure or failures as alleged above proximately caused Antonio May's death in that they proximately, directly and foreseeably caused John Doe Defendant deputies to use force that was foreseeably ineffective at subduing him, instead of safely gaining control of him or simply waiting for him to tire or calm down.

63.

Upon Information and belief, said Defendants knew of, ratified and/or condoned the conduct described herein.

64.

Due to the systematic, unconstitutional training practices or policies alleged herein, said Defendants are liable for the Plaintiffs' damages.

## COUNT IV:

## Negligence Against Defendant AXON ENTERPRISE, INC. ("AXON"):
## Wrongful Death Caused by Wanton, and Negligent Training

65.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint.

66.

Defendant AXON is engaged in the business of manufacturing, distributing and selling electrical control devices ("ECD's"), to law enforcement agencies throughout the United States and Canada, as well as replacement cartridges for the continuing use of the ECDs. Defendant AXON, designed, manufactured, sold, distributed, fabricated, assembled, bought, inspected, tested, serviced, marketed, warranted, and advertised TASER weapons to the Fulton County Jail.

67.

In connection with, and to promote and encourage these ongoing sales and the use of its products, including the ongoing sales of replacement cartridges, Defendant AXON makes representations regarding the potential risks and medical safety of its ECDs, and continuously provides training and training materials for law enforcement agencies for use in instructing their officers in the safe and efficient use of TASER ECDs.

68.

Defendant AXON has sold Model ECDs and replacement cartridges to the Fulton County Jail and has provided ongoing training materials, through the present day, in connection with those sales and sales of replacement parts such as cartridges.

69.

Defendant AXON has an ongoing duty to use reasonable and ordinary care in providing truthful and up-to-date training and medical information in connection with ongoing use of its products by various law enforcement agencies.

70.

Law enforcement agencies such as the Fulton County Jail do not independently research medical risks posed by ECDs, but instead rely on expertise, training and information provided by Defendant AXON.

71.

Since the first release of its initial "Advanced TASER," the 26-watt Model M26, in late 1999, AXON represented to its law enforcement agency customers and potential customers, and to the end users of its products, that the electrical current of its ECDs is well within established safety margins, and based on extensive animal and human testing cannot affect heart rhythms.

72.

Defendant AXON knew or should have known that the TASER used by the Fulton County deputies has an extremely high rate of causing myocardial stimulation when the electrodes are across the chest, and that ECDS cycled for longer durations are more likely to cause ventricular arrhythmias, including potential lethal ventricular fibrillation.

73.

Defendant AXON wantonly and negligently failed to modify its training, to instruct deputies to "aim for center body mass," and continuing to use illustrations in their training depicting law enforcement officers shooting persons directly in the chest with ECDs, where the risk of inducing ventricular arrhythmia is significantly greater than other areas of the body. This training was relied upon by the Fulton County Jail and the John Doe Deputies.

74.

Defendant AXON wantonly and negligently failed to instruct and warn its users that the risk of an adverse cardiac event, particularly when electrodes are vectored across the heart, increases dramatically not only when the darts are vectored across the chest and the barbs are located close to the heart, but also when the duration of the pulsing electrical current is extended beyond the pre-programmed 5-second duration.

75.

In addition to the knowledge of foregoing medical information, Defendant AXON continued to acquire information regarding the medical risks of ECDs which it wantonly and negligently failed to incorporate into its training programs.

76.

This information includes learning of its products inducing heart arrhythmias, such as Greshmond Gray in La Grange Georgia, Steven Butler in Watsonville, California and Darryl Wayne Turner in Charlotte, North Carolina.

77.

Because of formal experimentation, medical knowledge and actual incidents around the world, AXON:

A. Knew or should have known that the design, manufacture, assembly, marketing and distribution of the Taser used by the John Doe deputies were defective and dangerous;

B. Knew or should have known that because of the defects, the weapon could not be used safely for the purposes for which it was intended; and

C. Knew or should have known that the Defendants John Doe deputies would use the product as it was used in the facts alleged above.

78.

As a direct and proximate result of the foregoing wanton and negligent conduct of Defendant AXON in administering and updating its law enforcement training programs, Fulton County Jail John Doe Defendants were not trained on proper use of the ECD and was not trained that extending the duration of the trans-cardiac ECD current increases the danger of inducing a ventricular arrhythmia.

79.

Defendants John Doe deputies were not trained to recognize a cardiac arrest from a trans-cardiac ECD vector, or how to respond to such an event.

80.

When Defendants John Doe Deputies confronted Antonio May they pointed the TASER at the deceased and each shocked Mr. May at the same time in the same area of the body.

81.

There was no violence or threats of violence from Mr. May prior to the confrontation.

82.

Had Defendant John Doe deputies been properly trained they would have known that using the ECD to restrain the deceased in such a frightened state in such a configuration under such non-threatening circumstances would create an unreasonable risk of cardiac arrest.

83.

Had Defendants John Doe deputies been properly trained, they would have known to use a different option to control Mr. May.

84.

Due to AXON's negligent training, Defendant John Doe deputies simultaneously fired the ECD at Mr. May striking him in multiple separate places.

85.

Due to AXON's negligent training, John Doe Defendants simultaneously shot Mr. May, holding the trigger down for increments of several seconds not understanding that Mr. May would develop cardiac failure due to the altercation.

86.

Defendant AXON's conduct, as alleged above, was malicious, wanton and was done in reckless disregard for the consequences on persons affected by ECD usage.

87.

Defendant AXON's improper training, as alleged above, was motivated by a desire to conceal, minimize and distort the medical research regarding the risks of inducing cardiac issues because accurate representation of its products' medical risks would deter sales of the ECDs and would deter usage, which in turn would deter and lower sales of the cartridges and other replacement parts.

88.

Defendant AXON owes and owed a duty to the public, including Mr. May, to establish, maintain or sufficiently enforce standards and practices which would render their tasers reasonably safe so that the use of the tasers does not deprive members of the public of their Fourth and Fourteenth Amendment Rights.

89.

Defendant Taser acted with deliberate indifference to Mr. May's Fourth and Fourteenth Amendment Rights by failing to establish, maintain or sufficiently emphasize and/or enforce standards, which:

A.    Prohibit jail deputy users from utilizing tasers repeatedly on a single subject;

B.    Expressly and specifically prohibit jail deputies from deploying their tasers in unsafe ways, with certain and specific limits on amounts, durations, and locations of charges permitted to be deployed on a given person in accordance with accepted standards for the safe use of the tasers;

C.    Prohibit shooting taser charges onto or into the upper torso area; and/or;

D.    Prohibit jail deputies from deploying tasers in attempts to control people suffering from a psychotic episode more than two times, even if the use of the Taser does not successfully subdue the Impaired Person.

22

90.

Defendant AXON acted in deliberate indifference to Mr. May's rights in its failure to establish, maintain or sufficiently emphasize and/or enforce standards.

91.

Upon information and believe, Defendant AXON, by and through their officers, directors and/or managers, participated in, engaged in, and/or condoned, outrageous and aggravated conduct by acting in a gross and willfully wrong manner and by engaging in reckless and wanton disregard of Mr. May's rights, including by consciously and intentionally disregarding and acting indifferently toward the rights and safety of others, including the Mr. May, when these John Doe deputies knew or should have known that their conduct was reasonably likely to result in injury, damage, harm and potentially life threatening issues with the taser at issue and the training in the usage of the same.

92.

Defendant AXON's systematic indifference to establish, maintain or sufficiently emphasize and/or enforce standards as set forth herein , proximately caused the death of Mr. May.

93.

As a direct and proximate result of the wrongful conduct of Defendant TASER, as alleged above, Antonio May sustained fatal injuries resulting in his death.

94.

As the direct and proximate result of the willful and wanton conduct of Defendant, AXON, as alleged above, the Plaintiffs are entitled to recover

compensatory damages and punitive damages.

## COUNT V:

## Products liability (Design, Manufacture, Assembly and/or Distribution): State Law Claim against Defendant AXON Enterprise, Inc.

### 95.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

### 96.

Defendant AXON designed, packaged, produced, and trained users of the TASER weapons as described herein, and received valuable consideration for its products and services.  Defendant TASER had a legal duty to protect targets of its TASER weapons, including Mr. May, from unreasonable dangers of the product. Defendant TASER breached this duty by negligently designing manufacturing, assembling, distributing, and/or marketing the TASER weapons at issue in this case, the result being an unreasonably dangerous product capable of causing injury or death.

### 97.

Defendant AXON at all times mentioned herein, breached the express and implied warranties of merchantability and fitness for a particular purpose by selling, marketing, distributing, impliedly warranted that the TASER weapon was fit for the general purpose for which it was sold and provided.  Defendants Fulton County Jail and Defendants John Doe deputies, reasonably relied on said warranty, and on the skill and judgment of Defendant TASER in the manufacture, design, maintenance, and monitoring of the TASER weapons at issue in this case.

98.

In fact, the AXON weapons at issue in this case were not fit for the general purpose for which they were sold or provided and were unreasonably dangerous, defective, and unsafe.

99.

Mr. May died as a direct result of the use of the AXON weapons and the defects present in the tasers at issue in this case.

100.

Defendant AXON ratified, condoned and accepted the actions and omission of its employees and staff as it did nothing to correct potentially life-threatening issues with the ECR at issue and the training in the usage of the same.  Defendant AXON's systematic indifference to establish, maintain or sufficiently emphasize and/or enforce standards as set forth herein , proximately caused the death of Mr. May.

101.

Defendant AXON's above alleged breaches of duty directly and proximately caused Mr. May death and accordingly the Plaintiffs allege that they are entitled to recover compensatory damages and punitive damages, pursuant to O.C.G.A. §51-1-11.

## COUNT VI:

## Discrimination under the Americans With Disability/ Act and Rehabilitation Act Against Sheriff Jackson in his Official Capacity and against Fulton County, Georgia.

### 102.

Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint.

### 103.

Both Fulton County and the Fulton County Sheriff's office are public entities under 42 U. S. C. § 12131(1).

### 104.

As recipients of federal funds, the Sheriff and Fulton County are required by Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794) to make reasonable accommodations to persons with disabilities in their facilities, program activities and who receive their services. Such recipients are further required to modify such facilities, services, and programs as necessary to accompli this purpose. Accordingly, these Defendants are subject to the mandate of Section 504.

### 105.

Mr. May was disabled within the meaning of the ADA, 42 U.S.C. § 12131 (2), because he had a mental impairment that substantially limits one or more of his major life activities.

106.

Fulton County is statutorily obligated to provide medical treatment to individuals incarcerated in the Fulton County Jail. *See* O.C.G.A. § 42-5-2.

107.

Fulton County contracts with Naphcare, Inc. to provide health services in the jail.

108.

Fulton County has the sole authority to determine the medical contractor for the jail and determines the terms of the contract to provide services.

109.

The Sheriff is responsible for overseeing the jail, and to ensure that medical care is summoned by deputies if no medical personnel are available.

110.

The Sheriff acts as an arm of the County insofar as he sets policy and oversees practices which relate to summoning medical care for individuals in medical need, and for supervising individuals who are suicidal.

111.

As detailed in the factual allegations above, both the officers and the medical personnel who were involved in Mr. May's confinement and care acted with discriminatory animus resulting from the fact that Mr. May was suicidal and on amphetamines.

112.

Mr. May should have been provided accommodations to the jail's medical observation unit, and such accommodations could have been provided without constituting a substantial alteration in the jail's services.

113.

The failure to provide Mr. May with reasonable medical accommodations proximately caused his death and violated the ADA, 42 U.S.C. § 12131 (2).

## **COUNT VII:**

**Supervisory liability under 42 U. S. C. § 1983 against Sheriff Jackson in his individual and official capacities arising from the denial of medical treatment.**

114.

Plaintiffs re-allege and incorporate by reference all preceding paragraphs of this Complaint.

115.

Although Fulton County contracts medical services to a private corporation, that private corporation is not responsible for the provision of all medical services at the jail.

116.

Specifically, the Sheriff's office must serve as a liaison between inmates and medical staff, must alert medical staff to inmates' medical concerns, and must

assist medical staff in triage, communication, and monitoring inmates under medical supervision.

117.

The Sheriff's functions, as they relate to the provision of medical care, are performed on behalf of the County, which is statutorily obligated to provide medical services to inmates at the jail.

118.

Mr. May's mental illness and state of psychosis should have been obvious and apparent to the Defendant John Doe deputies.

119.

The actions of the Sheriff and the Defendants John Doe deputies demonstrate the customary indifference of the Sheriff's office to the medical needs of suicidal inmates.

120.

By implementing these quasi-medical decisions, the Sheriff acts on behalf of the County, in fulfillment of its statutory obligation to provide medical care to inmates.

121.

The Sheriff's inability to ensure that Mr. May had adequate medical treatment violated 42 U.S.C. 1983 and proximately caused the death of Antonio May.

## COUNT VIII: MEDICAL NEGLIGENCE

### 122.

Plaintiffs re-allege and incorporate herein the allegations contained in the preceding paragraphs above as if fully restated.

### 123.

Travis Williams, EMT and additional medical professionals employed by Naphcare, Inc. failed to exercise that degree of skill and care ordinarily required by the medical profession in general, under like conditions, and similar circumstances in their treatment of Antonio May.

### 124.

Travis Williams, EMT and the additional medical professionals employed at Naphcare, Inc. deviated from the standard of care by failing to do the following:

1) It was a deviation of the standard of care and deliberate indifference for Mr. Travis Williams, an EMT employed by Naphcare, Inc., to not involve other medical professionals (LPN, RN, PA, MD) and seek a transfer of Mr. May to a higher level of medical care at the Fulton Jail when Mr. Williams performed the intake of Mr. May at the Jail, and learned that Mr. May tested positive for amphetamines and had suicidal ideation;

2) It was a deviation in the standard of care and deliberate indifference for the medical professionals at the Fulton County Jail and Naphcare, Inc. to not closely monitor Mr. May in a medical environment at the Jail where he could be medically observed (as opposed to a holding cell) when the medical

professionals became aware that Mr. May tested positive for amphetamines and that he had suicidal ideation.

3)    It was a deviation in the standard of care and deliberate indifference for the medical professionals at the Fulton County Jail and Naphcare, Inc. to not place Mr. May on detox protocol/chemical sedation when he entered the Fulton County Jail after he tested positive for amphetamines.

125.

The breaches of the standard of care by the medical professionals acting as agents and/or employees of Naphcare, Inc. were the proximate causes and the causes in fact of the death of Antonio May.

126.

The negligence of the employees and agents employed by Naphcare, Inc. includes, but is not limited to, the negligent acts and omissions set forth in the affidavit of Joseph William Wright, M.D. CCHP-P filed contemporaneously with this complaint as Exhibit "B," pursuant to the requirements of O.C.G.A. § 9-11-9.1, and is incorporated herein as if fully restated.

127.

At all times relevant to this action, the medical professionals that treated Antonio May were acting as agents or employees of Defendant Naphcare, Inc.

128.

Defendant Naphcare, Inc. is responsible for the negligence of the medical professionals that treated Mr. May under the doctrine of *respondeat superior*, agency or apparent agency.

## Count IX:
## Attorney's Fees against all Defendants

### 129.

Plaintiffs re-allege and incorporate herein the allegations contained in the preceding paragraphs above as if fully restated.

### 130.

Plaintiffs seek attorneys' fees against all Defendants under O.C.G.A. § 13-6-11 as Defendants have acted in bad faith, been stubbornly litigious, and caused the plaintiffs unnecessary trouble and expense.

### 131.

Plaintiffs also seek attorney's fees under 2 U.S.C. § 1988(b), 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b) or their causes of action under 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.

**WHEREFORE**, plaintiff prays that he/she have a trial on all issues and judgment against defendant as follows:

(a)   That Plaintiff recovers the full value of the life of the decedent;

(b)   That Plaintiffs recover for the decedent's pre-death mental and physical pain and suffering, funeral expenses and medical expenses;

(c)   Award punitive damages against each Defendant who has been sued in their individual and corporate capacity;

(d)     Award reasonable attorney's fees, expenses, and costs of litigation;

(e)     That Plaintiffs recover such other and further relief as is just and proper;

(f)     That all issues be tried before a jury.

This 29th day of May, 2019.

Respectfully Submitted,

/s/ Michael D. Harper
MICHAEL D. HARPER
Georgia Bar No. 328378
Attorney for Plaintiff April M. Myrick, Administrator of
the Estate of Antonio D. May, and April M. Myrick,
Legal Guardian of Za'Kobe K. Rickerson and Jordan I.
Rickerson, minor children of Antonio May.

Michael D. Harper, P.C.
1075 Peachtree St. NE, Suite 3650
Atlanta, GA 30309
Telephone: (404) 965-3565
Facsimile:  (404) 965-3765
Email: mharper@mharperlaw.com

/s/ Tremaine Teddy Reese
TREMAINE TEDDY REESE
GEORGIA BAR NUMBER: 503391
Attorney for Sheena Pettigrew, Natural
and Legal Guardian of Elijah Pettigrew, minor child of
Antonio May.

The Reese Firm, LLC
1318 Stark Avenue
Columbus, Georgia 31906
Telephone: (706) 341-1822
Facsimile:   (706) 243-6446
Email: teddyreese@teddyreesefirm.com