# Foster Experts, LLC

# Randy Foster

# Law Enforcement Expert Witness Report

# THE ESTATE OF ANTONIO DEVON MAY

## Plaintiff,

## v.

# FULTON COUNTY, GEORIA SHERIFF THEODORE JACKSON, NAPHCARE, INC & AXON ENTERPRISE, INC.

# Table of Content

## Page.

3. Randy Foster qualifications

5. Expert Witness Opinion

6. Initial Approach

7. Used of Taser.

9. Used of OC Spray

10.     Used of closed fist strikes.

11.     Restraint Chair- Improper Usage

12.     Spit Mask Utilization

13.     Compensation

14.     Right to Amend

15.     Exhibit A – Cases Testified as an Expert in Deposition or trial from 2017 – 2020.

16.     Exhibit B – law Enforcement training and resume

# Randy Foster Qualifications

I am a longtime military and civilian law enforcement officer whose career spans over 25 years on the federal, state, and local levels.

I retired as a Supervisory Deputy U.S. Marshal from the U.S. Department of Justice. My primary duty as a Supervisory Deputy U.S. Marshal was to oversee fugitive, court, and prisoners' operations.

I manage the lagers cell block operation in the U.S. Marshals Service, DC Superior Court Cellblock. On avg. 350 prisoners a day.

I assumed custody for all prisoners charged with DC and federal offense, no matter which Law Enforcement agency made the arrest.

I investigated many deputies use of force incidents as a Supervisory Deputy U.S> Marshal. I also provided preliminary investigation for the U.S. Marshals Service Internal Affairs for my district's use of force incidents. I worked on fugitive task forces and made over 100 arrest during my career with the U.S. marshals Service.

Before working for the U.S. Marshals Service, I worked as a police investigator with the Fayetteville Police Department, in Fayetteville, N.C. there, I conducted hundreds of detentions and arrests over a period of five years. I have been retained over ten time as an expert in Use of Force, use of Restraint Chair and Police Procedures. I have served as an expert on the local, state, and federal levels. In 2018 I was qualified as an expert in Police Procedures and use of Force in a case against the Washington Metro Area Transit Authority in the U.S. District Court for the District of Columbia, Delphine Taylor v. WMATA, et al. A list of the cases in which I have testified as expert in a deposition or trail in the past five years is attached as Exhibit A.

I have been an instructor on topics concerning use of force, including how to determine weather a subject poses a threat to a law enforcement officer during an encounter. That particular course was approved for Continuing Legal Education credit for attorneys in the state of Florida. I also have completed numerous uses of force trainings, including Protective Action Response Training, Florida Department of Juvenile Justice, Less Lethal Techniques- OSS Academy, Use of Force and Deadly Force – OSS Academy, Police Use of Force Course Completion – FDL9003- FDLE

A list of the relevant training I have led and completed, and the education I have received, is attached as Exhibit B.

II.   Documents and information Reviewed in Preparation for this Report.

1. Fulton County Sheriff's Office Internal Affairs Investigation, Case Number 18050 Pt.2
2. Fulton County Sheriff's Office Standard Operating Procedures – Use of Force #1.01
3. Fulton County Sheriff's Office Use of Force Report Case Number#JA18-1798
4. Supplemental Statement from Deputy G. Francois#2593
5. NaphCare Medical Emergency Code Report Date 09/11/2018 ID#1818396
6. Supplement Incident Report# JA18-1798 Badge# D1135, D1118, D1138, D1005, D1168,2985, D1269, D1019, D1230, D1159, D1185, D1196,2737,2531
7. Review Photos of Fulton County Sheriff's Restraint Chair
8. Officer Omar Jackson Individual Officer Profile.
9. Fulton County Sheriff's Office General Order #2009-06 Safety Restraint Chair.

10.     Fulton County Sheriff's Investigative Summary Report Case 18050 Pt.2
11.     Taser X26P ECD User Manual – Axon
12.     TASER Handheld CEW Warnings, Instructions, and Information: Law Enforcement
13.     Fulton County Sheriff's Surveillance Video of cellblock area.


# Expert Witness Opinion

I have been asked to opine on Fulton County Sheriff's use of force in Antonio Devon May detention on September 11, 2018 by Officers Whitaker, Cook, Saadiq, Jackson, Roache, Delacruz, Copeland, Strowder. My opinions on what constitute use of force, are based upon my specialized experience, training, and knowledge of use of force, as well as my continued law enforcement topic research and my 25 years of work in law enforcement. Based on my training, experience, and knowledge of accepted use of force, it is my opinion that Fulton County Sheriff's detention Officers Jackson, Cook, Whitaker, Strowder, Roache, Delacruz, Copeland used excessive use of force to gain compliance from Antonio May. A number of the actions they took in the course of using force on Antonio May failed to comply with Officer Cook initial contact with Antonio May, and Fulton County Detention officer use of excessive and unnecessary force on Antonio May. Officers should use only the amount of force necessary to mitigate an incident, make an arrest, or protect themselves or other from harm.

# Initial Approach

On 09/11/2018 Officer Cook responded to assist Sgt J. Saadiq with Antonio May who was masturbating inside a holding cell#172. Officer Cook observed May was fully exposed(nude). Cook began to give directives to May to back up from the cell door and put his clothes on, May failed to comply after commands to place his clothing on. Officer Cook asked the tower to open cell#172 while still giving loud verbal commands for inmate May to back up from the door and get on the ground face down. Officer Cook discharged one cartridge taser giving a 5 second cycle taking May to the ground.  It is my opinion that the approach by Officer Cook was aggressive in nature which failed to deescalate the situation and did not give Antonio May enough time to respond to commands before being tased. May was not damaging any county property; did not pose an immediate threat to anyone while in the cell; did not commit any offenses and he was passively resisting because he refused to put his clothes on. Therefore, the initial approach by multiple officers to enter the cell with less than lethal weapons (tasers; oc sprays) was excessive use of force because it escalated to excessive use of force.  Based on the totality of the circumstances during this incident, May at 5"10 and weighing at less than a 171 pounds, posed no threat to six officers because May was searched prior to intake; he was naked; possessed no weapon and was in closed controlled cell.  The video shows five or six officers in single file entering May's cell at the same time, this behavior by the officers is indicative of excessive use of force.

# Used of Taser.

Officer Cook stated in his report that while in the cell, he gave may commands to get down on the floor and May failed to comply. Officer Cook then discharged his taser. His statement does not match the sheriff's department surveillance video's depiction of what took place before his entry into the cell. Fulton County sheriff Officers Jackson, Cook and Whitaker enter May cellblock, with X2 Taser, May who poses no threat toward the officers was tased eight times.

Totality of all Tasing

a.    Mr. May was tased 8 times in 1 minute and 21 secs per the taser reports.

b.    The below times are from the taser report with clock drift correction.

i.    3:49:22 PM, Cook. Initial Tase, Trigger Bay 1 Activated

ii.    3:49:30 PM, Cook Arc Button Depressed

iii.    3:49:35 PM, Cook Arc Button Depressed

iv.    3:50:11 PM, Jackson Arc Button Depressed

v.    3:50:18 PM, Whitaker Bay 1 Activated

vi.    3:50:22 PM, Arc Button Depressed

vii.    3:50:30 PM, Arc Button Depressed

viii.    3:50:43 PM, Arc Button Depressed

c.    Armed Taser Times

i.    Note the Arm Taser Time for each officer.

ii.    3:49:11 PM, Cook Armed Taser

iii.    3:49:42 PM, Jackson Armed Taser

1.    7 secs after Cook delivered his last Arc Button Depression

iv.    3:50:10 PM, Whitaker Armed Taser

1.    1 sec before Jackson delivered his stun drive tase.

Three officers participating in tasing May. They were essentially tasing Mr. May back-to-back to back. Whitaker was arming his taser before Jackson was delivering his tase.

Officer Jackson admits in his statement that he tases Mr. May, He admits he tases him on his left leg. Mr. May was in full control of six officers, wearing leg constraints, and Officer Jackson still tased him. Based on Jackson's statement, Mr. May was on the ground after the first tasing from Officer Cook. Therefore, the one tasing event by Jackson and the three tasing events by Whitaker all happened while Mr. May was on the ground, being held down by, at minimum, four officers, and in leg constraints.

My opinion that the use of X2 Taser was excessive use of force and the failed to used properly Taser practices, which can cause a potentially hazardous situation which if not avoided could result in death or serious injury. See (Taser Handheld CEW Warnings, Instructions, and information: Law Enforcement)

The Fulton County Sheriff's Use of Force report indicate approximate Taser location of the chest, Left Thigh and Stomach. An officer using a Taser must avoid sensitive areas, avoid targeting the taser on sensitive areas of the body such as the Chest area (area of the heart). The officers failed to do this during the tasing May.  Fulton County Offices failed to follow the Taser Warnings; Avoid simultaneous Taser exposures. Multiple Tasers at the same time could have cumulative effects and result in increased risk. May was tased 8 times by Fulton County Officers in less than two minutes.  The Drive-Stun mode is for pain compliance only. The use of a taser in drive-stun mode is painful and does not cause

incapacitation. Officers should avoid using repeated drive-stuns on individuals if compliance is not achieved.

## USE OF OC SPRAY

The Chemicals include pepper spray (also Known as OC- oleoresin capsicum) Based on the officer's statements, Mr. May was OC sprayed and struck by Closed Fist Strikes. Officer Whitaker admits in his statement to using OC Spray on Mr. May in his facial region. According to him, Mr. May was attempting to exit his cell after the series of tasing. That does not reconcile with the statements of other officers like Jackson whose statement read during the time of the OC spraying, he was still holding down Mr. May's legs with other officers. Officer Strowder stated her statement that Whitaker gave her his OC Spray can as she was exiting the cell. It is My opinion base on my training and 25yrs of law enforcement that using OC spray while Mr. May legs held down and being strikes in the face is excessive of force, and an objectively reasonable officer would not do to Mr. May.

# USED OF CLOSED FIST STRIKES

Officer Strowder admits in her statement to striking Mr. May 4 times, in his face and other regions, with a closed fist. According to Strowder, Mr. May grabbed her handcuffs with his left hand and was tugging on them. So, she had to strike him to get him to release them. At least, three officers were on Mr. May waste down. Three other officers, at this point, were actively engaged near his upper body region attempting to put him in handcuffs.

According to Officer Whitaker, they were successful in placing Mr. May in handcuffs after usage of the OC Spray in the facial region.

It is My opinion striking Mr. May while he was being held down, harmless, controlled and contained by six officers is clearly excessive. Striking Mr. May while he was being held down, harmless, controlled and contained by six officers, suffering from OC Spray in his facial region is clearly excessive use of force and even more egregious.

## Restraint Chair- Improper Usage

Several Fulton County officers were found in violation of jail policy of their usage of the restraint chair. They used the restraints from the chair, handcuffs, waste chains, leg restraints and a spit mask on Mr. May while he was still suffering for the OC sprayed applied to his facial region. The Safety Restraint Chair with equipment comprised of four- or five-point restraints to restrain and limit the inmate's movement. It is designed to provide staff personnel with the most humane, safest, and minimum psychological traumatizing techniques for restraining out of control and violent inmates.  The Restraint Chair is used when an inmate has demonstrated violent or incontrollable behavior; preventing injury to themselves or others; preventing the inmate from causing property damage; minimizing the possibility of a situation escalating; obtaining vital signs and assess medical condition to aggressive and/or inebriated inmates; may also be used in the application of a forced medication.  On the back of The Safety Restraint Chair is a warning sign the reads, "WARNING, Use of the Emergency Restraint Chair without first reading and thoroughly understanding the instructions could cause injury or death".  It is my opinion that the officers violated Fulton County Safety Restraint Chair policy and the Restraint Chair was effectively use for what it was intended to be used for.   A Safety Restraint Chair is used to restrain an inmate and to transport an inmate. A transport chair does not have the restrains like a Safety Restraint chair.  A transport chair is used to transport like a regular wheelchair.  The restraint chair is NOT intended to be, nor shall it be used, as a form of discipline or punishment.  It is my opinion that the Fulton County Officers used The Safety Restraint Chair as an instrument to punish and discipline Mr. May which made their use of The Safety Restraint Chair excessive force.   Part of security footage we did receive shows Mr. May leaving his cell, in the restrain chair, with his feet

dragging the ground. I completed and passed the Restraint Training Test and currently hold a certification to operate The Safety Restraint Chair due to expire on 6/4/2022.

## Spit Mask Utilization

Spit hoods are temporary protective devices designed to prevent the wearer from biting and/or transferring or transmitting fluids (saliva and mucous) to others. Spit hoods may be placed upon persons in custody when the office reasonably believes the person will bite or spit, either on a person or in an appropriate place. They are generally used during application of a physical restraint, while the person is restrained, or during or after transport.  Officers utilizing spit hoods should ensure that the spit hood is fastened properly to allow for adequate ventilation and that the restrained person can breathe normally.  Persons who have been sprayed with oleoresin capsicum (OC) spray should be thoroughly decontaminated including hair, head, and clothing prior to application of a spit hood.  Those who have been placed in a spit hood should be continually monitored and shall not be left unattended until the spit hood is removed.  Spit hoods shall be discarded after each use.

The officers placed Mr. May in a spit mask before any attempts were utilized to try to remove the contamination. The OC spray undoubtedly contaminated the facial region of the mask, blocking fresh air and re-contaminating any air Mr. May was attempting to breathe.

All indications support that the same Spit Mask was placed back on Mr. May's face after they "decontaminated" his face in the shower area. No officers recall retrieving a new mask. When he leaves the shower room on the video, he is again wearing the Spit Mask that was on his face. As of yet, no officer stated in they report to washing out the Spit Mask, if that is the same mask. Only one officer Strowder speaks of originally retrieving the Spit Mask.

It is my opinion that the Fulton County officers used the Spit Mask as an instrument of excessive force to punish Mr. May.

For all these reasons, it is my opinion that the Fulton County officers used excessive force against Antonio May and are inconsistent with well accepted use of force practices.  I base my conclusion on the documents, videos and exhibits in this expert report.  My specialized experience and training and knowledge of use of force practices, my continued law enforcement topic research, and my 25 years of work in law enforcement.

## **Compensation**

I have been retained by Plaintiff's counsel at an advance retainer fee of $2,500 for 16 hours of work in connection with reviewing materials, providing expert consultation, drafting, and revising expert reports; and thereafter shall testify in court or a deposition at $275 an hour.

## **Right to Amend**

I reserve the right to amend and/or supplement these opinions if additional information becomes available, or in response to expert disclosures of the defendant or plaintiff, or if questions are asked of me that do not relate to information contained in this disclosure.  All my opinions are expressed to a reasonable degree of professional certainty.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.


Randy Foster


Dated: March 25, 2021

# EXHIBIT

# A

## Cases Testified as an Expert in Deposition or Trial From 2017-2020

**Delphine Taylor v. WMATA, et al.**

**U.S. District Court for The District of Columbia**

**Case No:** 1:17-CV-00123

**On Behalf of:** Plaintiff

**Expertise:** Police Procedures and Use of Force

**State of Florida v. Wanda White-Scott**

**19th Judicial Circuit in Indian River County Florida**

**Case No:** 2017mm1766

**On Behalf of:** Defendant

**Expertise:** Police Procedure

**Crystal Jackson v. Inmate Services, Inc., et al.**

**U.S. District of Arizona**

**Case No:** 2:17-cv-01277-JJT-DKD

**On Behalf of:** Plaintiff

**Expertise:** Corrections and Jail procedures

**State of Florida v. Demetric Denario Carter**

**The Circuit Court for ESCAMBIA COUNTY, FLORIDA**

**Case No:** 1717CF006017A

**Expertise**: Use of Force

**On Behalf of:** Defendant


**Rudy Joseph v. City of Tallahassee, Officer Damon Miller**

**Case No:** 2017-CA-908

**Expertise:** Use of Force and Police Procedures

**On Behalf of:** Defendant


**Hattie Reynolds v. City of Daytona Beach**

**Middle District of Florida**

**Case No:** 6:18-cv-01921-JA-KRS - Plaintiff

**Expertise:** False Arrest

**On Behalf of:** Plaintiff

**EXHIBIT**

**B**

**<u>Law Enforcement Instruction</u>**

Police/Subject Threat Assessment Encounter - Continuing Legal

Education for Attorneys, held on April 13, 2019

O.C. Spray: Training for Officers – held in 1988 in Birmingham,

Alabama

**<u>Law Enforcement Training</u>**

Restraint Chair Certification: certified to operate Restraint Chair-

2017

Searching Motor Vehicles – Georgia Public Safety Training Center

Vehicle Pullovers - Georgia Public Safety Training Center

Taser Evidence Collection & Analysis - Axon Academy Certified -

2018

Police Use of Force Course Completion - FDL9003 – FDLE -2018

Prison Rape Elimination Act - (PREA) USDOJ – Training - 2012

Law Enforcement Liability - OSS Academy - Certificate of

Completion - 2018

Jail Inspection Training - U.S. Marshals Service - 1996

Electronic Control Device - OSS Academy - Certificate of

Completion - 2018

Use of Force & Deadly Force - OSS Academy - Certificate of

Completion - 2018

Drug Enforcement for Patrol Officers - NC Justice Academy - 1989

Basic Juvenile Officer Training - NC Justice Academy - 1989

Specialized Legal Concerns in Drug Investigations - NC Justice/

Academy - 1990

Warrantless Searches - NC Justice Academy - 1990

Arson Investigation - NC Justice Academy - 1991

Less Lethal Techniques - OSS Academy - Certificate of Completion

- 2018

United States Marshals Service Supervisory Leadership

Development School – Certificate - 2002

United States Marshals Service Advanced Deputy U.S. Marshal

Training -2008

Video Evidence Examinations for Use of Force Investigator – 2018

Video Examinations for the Police Investigator - 2019

## Specialized Training Academy

United States Marshals Service Training Academy, Deputy U.S.

Marshal Academy (Glynco, GA) -1992

Criminal Investigator Academy, Federal Law Enforcement Training Center (FLETC), (Glynco, GA) - 1991

Northeastern Alabama Police Academy, Jacksonville State University- 1998

Oleoresin Capsicum (O.C.) Instructor Course (Anniston, AL)

Fayetteville, North Carolina Police Academy (Fayetteville, NC) - 1987

Federal Air Marshal Academy (Air Marshal Training) (Atlantic City, NJ) - 2003

U.S. Army Military Police Academy. (Military Police Academy) - 1997

Protective Action Response Training, Florida Department of Juvenile Justice- 2013

North Carolina Justice Academy - Preliminary Criminal Investigation – 1988

**Education**

Texarkana College; Major: Criminal Justice - (Undergraduate Certificate) -2001

Community College of the Air Force – Criminal Justice/Police

Science -2013

Udemy: Effective Expert Witnessing Training - Certificate of

Completion – 2017

# RANDY FOSTER

Ph. (321) 431-9691
Foster1963@yahoo.com
4680 Lipscomb St. Suite 5B
Palm Bay, Florida
Retired Supervisory Deputy U.S. Marshal
Law Enforcement Expert
*Curriculum Vitae*

## Professional Profile

Randy Foster has had a longtime military and civilian law enforcement career that spans over 25 years on the federal, state and local levels. Foster has testified in Federal Court and State Court on multiple occasions.  He has also been appointed as an expert witness in Florida's 18th and 19th Judicial Circuit.

Before retiring as a Supervisory Deputy Marshal from the U.S. Department of Justice, Foster was promoted to a Supervisory Deputy U.S. Marshal in charge of 80 Deputy Marshals and administering a budget that encompassed over one million dollars. His primary duty was to oversee fugitive operations, and was responsible for prisoner transport, as well as the protection of officers of the court.

Foster also responded to Hurricane Katrina New Orleans as a Federal Air Marshal and worked to help save over 3,000 lives. In addition, while serving as a National Guardsman Member, he responded to assist the Honduras government with Hurricane Mitch in 1998.

As a Deputy U.S. Marshal, he protected U.S. Supreme Court Justice Clarence Thomas and Former U.S. Attorney General Michael Mukasey; investigated Wanted Federal Fugitives; and

performed several protection details at the World Trade Center bombing trial in New York.

# Education

1. **Texarkana College**; Major: Criminal Justice –
   (Undergraduate Certificate)
2. **Community College of the Air Force**; Major: 91JY Criminal Justice (60 SEM HRS)

# Certification:
**Restraint Chair Certification:** - certified to operate Restraint Chair-2017
**Taser Evidence Collection & Analysis** - Axon Academy Certified-2018
**Certified in Florida Courts** as a Video Evidence Examination Expert

# Specialized Training
**Florida Department of Juvenile Justice** - Protective Action Response Training - 2014
**FDLE**: Police Use of Force Course Completion - FDL9003 -2018
**Northeastern Alabama Police Academy**: Oleoresin Capsicum (O.C.) Instructor Course (Anniston, AL) -1999
**Federal Air Marshal Academy**: (Air Marshal Training) -2003
**U.S. Army Military Police Academy**. (Military Police) -1998
**Use of Force-Training, Transfer, Deployment and Court** –
L.O.C.K.U.P – Police Combat Systems
**TASER Medical Research Training to Mitigate Risk** – Dr. Donald Dawes – AXON
**Biomechanical Aspects of Use of Force Encounters** – Jamie Borden – Force Science Instructor
**Bureau of Criminal Apprehension – Minnesota Department of Public Safety**
Eyewitness Identification procedures

# Law Enforcement Training

# North Carolina Justice Academy

**The North Carolina Justice Academy is a division of the North Carolina Department of Justice. The Academy offers training programs to criminal justice personnel, provides technical assistance to criminal justice agencies upon request, and develops and distributes educational and training materials.**

**Basic Law Enforcement Certification (BLET) Curriculum**, North Carolina Justice Academy [CICP Accredited]: BLET is comprised of 36 blocks of instruction including Firearms, Driver Training, Motor Vehicle Law, Arrest, & Search & Seizure.  An extensive ethics section is woven throughout the training.

**Training Completion**
**Preliminary Criminal Investigation Training. - 1988**
**Drug Enforcement for Patrol Officers - 1989**
**Basic Juvenile Officer Training. – 1989**
**LECC Workshop – 1990**
**Specialized Legal Concerns in Drug Investigations – 1990**
**Warrantless Searches -1990**
**LECC Workshop – 1990**
**Police in-service Training-1991**
**Arson Investigation-1991**
**Interview and Interrogation – 1991**
**Fayetteville Police Academy (Fayetteville, NC)**

# Americans for Effective Law Enforcement

**AELE is a research driven educational organization that produces and disseminates legal information through traditional seminars, via electronic media and direct contact.**

**Training Completion**
**Discipline & Internal Investigations – 2018 (Certificate of Attendance)**
Employee Disciplinary rights
Internal Affairs and Discipline Process Auditing
Administrative Investigations; First Amendment Issues & Application
Internal Affairs Current Trends; Internal Affairs New Developments

Body-Worn Cameras; Sexual and Racial Harassment in the workplace

# Daigle Law Group, LLC.

**Daigle Law Group, LLC is one of the nation's leading law firms that specialize in management consulting services in support and development of effective and constitutional policing practices. Our firm focuses on legal representation, management organizational reviews, policy and procedure development and leadership training**

## Training Completion

**De-Escalation – What Does This Mean?**
**Use of Force Policy Development and Training Standards - 2018**
**United States Supreme Court Update 2017-2018 – 2018**

## USE OF FORCE SUMMIT – 2018

Constitutional Law    6hrs Course – Connecticut POSTC
Use of Force            6hrs Course - Connecticut POSTC
Civil Liability          8hrs Course – Connecticut POSTC
Arrest Related Death Investigations
Force Reporting and Force Investigation
Tactical Operations Legal
Use of Force and Dogs
Officer involved shooting Different Perspectives
Use of Force Current Trends – Legal Standards for Policy and
Training Developing Effective use of Force Policies and Training
De-Escalation and Mental Illness

## INPUT- ACE – Training

Video Evidence Examinations for Use of Force Investigator – 2018
Video Examination for Use of Force Investigator – Forensic Video
Solutions – 2018

## Udemy

Effective Expert Witnessing Training – 2017
De-escalation for Law Enforcement – 2019

# OSS Academy
**is a licensed training provider with online law enforcement and corrections courses approved or recognized by many Peace Officer Standards and Training Boards?**

## Certificate of Completion
**Law Enforcement Liability – 2018**
**Electronic Control Device – 2018**
**Use of Force & Deadly Force – 2018**
**Less Lethal Techniques - 2018**

# Federal Law Enforcement Training Center
**The Federal Law Enforcement Training Centers (FLETC) provides**

## Certificate of Completion
Criminal Investigator Academy (G.S.-1811) – 1991

# United States Marshals Service Academy:
Deputy U.S. Marshal Academy
Prison Rape Elimination Act - (PREA) USDOJ - Training
Jail Inspection Training
Supervisory Leadership Development School
Advanced Deputy U.S. Marshal Training

# United States Department of Justice
Police and Dog Encounters: Tactical Strategies and Effective Tools to Keep Our Communities Safe and Humane

# **Experience**

<u>City of Palm Bay</u>
<u>11/2020 to present</u>
City Councilman for the city of Palm bay, Florida
Elected member of a Palm bay city government. City councilmen serve as the legislative branch of city governments and vote on laws and proposals relating to various community issues. I make legislative decisions dealing with topics such as the allocation of funding to provide for public services, community development projects, or issues of land use and budget matters. I am elected at large to a term of four years.
Budget
A city council has the authority to approve operating and capital budgets and continually oversees revenues and expenditures for local government operations, according to the Palm Bay City Council. Working towards the establishment of a solid budget proposal is one of the primary duties of a council person. It affects every other aspect of their legislative powers by establishing priorities and allocating resources for city projects and services. I also conduct review hearings on how city agency programs are working and whether budgeted funds are being well spent, according to the Palm bay City Council.

Land Use and Community Development
I have the power to review and implement policies relating to the use of city land. I vote to approve zoning changes, housing and urban renewal plans, and community development plans.

Public Services
Providing for basic public services and responding to the concerns of their constituents is an important responsibility of council persons.

## Foster-Experts, LLC
11/16 -Present
Owner and Consultant Palm Bay, Florida

Legal, law enforcement consultant and expert witness firm – providing legal consultation and expert witness services on federal, military and state level law enforcement agencies. Clients include civil rights, personal injury, and criminal defense attorneys as well as prosecutors and law enforcement agencies.

## Florida Department of Juvenile Justice
2014
## Juvenile Detention Officer – Rank Corporal
Brevard Juvenile Detention Center
5225 Dewitt Avenue Cocoa, FL 32927

This is a highly responsible position in the criminal justice system. The employee is expected to perform all duties in the optimum responsible manner, demonstrate leadership by being a positive role model for staff, youth and community and treat all persons with dignity and respect. Ensures the safe and secure custody of all assigned youth while ensuring that all youth are provided their constitutional rights with special concerns for legal, medical and mental health issues. Uses security and emergency equipment to ensure the safety and security of detained youth and facility.

# Supervisory Deputy U.S. Marshals (Retired)
1991 – 2003 and 2007-2013

## United States Marshal Service
District of Columbia (Superior Court) H. Carl Moultrie Courthouse
500 Indiana Avenue, N.W., Room C-250 Washington, DC 20001

Supervisory Deputy U.S. Marshal's duties include following duties: Apprehending fugitives – I work with federal, state and local authorities to apprehend and arrest fugitives.

Transporting and managing prisoners - Managed the Justice Prisoner and Alien Transportation System (JPATS) is one of the largest transporters of prisoners in the world — handling more than 1,000 requests every day to move prisoners between judicial districts, correctional institutions, and foreign countries.

Protecting members of the federal judiciary – I ensure the safe and secure conduct of judicial proceedings and protect federal judges, jurors and other members of the federal judiciary by anticipating and deterring threats and employing a variety of innovative protective techniques.

I Managed and the selling assets – Under the Department of Justice's Asset Forfeiture Program, I manages and disposes of properties seized and forfeited by federal law enforcement agencies and U.S. attorneys nationwide in federal criminal investigations.

Protecting federal witnesses – I provides 24-hour protection to all witnesses while they are in a high threat environment, including pre-trial conferences, trial testimonials, and other court appearances. In both criminal and civil matters involving protected witnesses, cooperates with local law enforcement and court authorities in bringing witnesses to justice or in having them fulfill their legal responsibilities.

Serving court documents – I supervised deputies who authorized to execute federal court civil and criminal process through a subpoena, summons, writ of habeas corpus, warrant or other means.

• Judicial Security
• Transporting Prisoners/JPATS
• Fugitive Investigations

- Prisoner Services
- Special Missions and Programs
- Asset Forfeiture
- Witness Security

My law enforcement career which spans over 25 years on the federal, state and local levels. Before retiring as a Supervisory Deputy Marshal from the U.S. Department of Justice, as an Supervisory Deputy U.S. Marshal I supervised over 80 Deputies Marshals and my primary duty was to oversee fugitive operations, responsible for prisoner transport, the protection of officers of the court.

# Federal Air Marshal Service (FAMS)
## Sr. Federal Air Marshal
2003-2006

Dallas Field Office Dallas, Texas

Federal Air Marshal Service (FAMS) is a United States federal law enforcement agency under the supervision of the Transportation Security Administration (TSA) of the United States Department of Homeland Security (DHS).

As a Federal Air Marshal, I was to detect, deter, and defeat hostile acts targeting the United States. As a Federal Air Marshals (FAMs) I often travelled. I was also trained to be highly proficient marksmen. Air marshals are considered to have the highest firearms qualification standards of all United States federal law enforcement agencies. As an Air Marshal, my job was to blend in with other passengers on board aircraft and rely heavily on their training, including investigative techniques, criminal terrorist behavior recognition, firearms proficiency, aircraft specific tactics, and close quarters self-defense measures to protect the flying public.

# Security Force Member (Air Force Police)

**Staff Sergeant – Security Force officer (MP)**
1997-2004
Texas Air National Guard Fort Worth, Texas

The use of deadly force to protect Air Force personnel and resources are among the serious responsibilities of security forces. I may be called upon to protect nuclear or conventional weapons from hostile forces. My duties also call for performing life-saving procedures like CPR, when acting as first responders to an accident or disaster situation. As a Security forces personnel, I was involved with the planning to implement security policies and procedures. When called upon to provide oversight and guidance or assistance to commanders; and as a supervisor to train other security forces personnel. My duties include inspecting and evaluating the other personnel and analyzing any resulting reports or statistics.

# Fayetteville Police Department
# Fayetteville, North Carolina
# Investigative Detective
1987-1991

My responsibilities were to enforce the laws and regulations of North Carolina State, as well as enforce Fayetteville city laws and regulations. Patrol an assigned area, conduct criminal investigation, give assistance to motorists and other citizens, safeguard property, direct traffic, and investigate accidents. As an officer, I conducted preliminary investigations of any type of crime or complaint; made a report of findings and enlist further aid, if necessary, to apprehend violators of the law; appeared in court as witnesses; and assisted other law enforcement agencies.