## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| THE ESTATE OF ANTONIO DEVON MAY, | ) | |
| by and through his Administrator, | ) | |
| APRIL M. MYRICK, APRIL M. MYRICK, | ) | |
| Legal Guardian of ZA'KOBE K. RICKERSON, | ) | |
| a minor, and JORDAN I. RICKERSON, a minor, | ) | |
| SHEENA PETTIGREW, Mother and | ) | |
| Natural Guardian of ELIJAH WARREN, | ) | |
| a minor. | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION: |
| | ) | |
| v. | ) | 1:19-CV-2440-TWT |
| | ) | |
| FULTON COUNTY, GEORGIA, | ) | **JURY TRIAL DEMANDED** |
| SHERIFF THEODORE JACKSON, | ) | |
| in his official and individual capacities, | ) | |
| JASON ROACHE, DERRICK PAIGE; | ) | |
| JAMILLAH SAADIQ, JAMEL GOODWINE, | ) | |
| WILLIAM WHITAKER, AARON COOK, | ) | |
| OMAR JACKSON, JERMAINE COPELAND, | ) | |
| KENESIA STOWDER, JORDAN WILCHER, | ) | |
| GUITO DELACRUZ, JASMINE ROWE, | ) | |
| MARY STOVALL, MYRON BUSH, | ) | |
| TRAVIS WILLIAMS, DAVID DIDIER, PA, and | ) | |
| NAPHCARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## THIRD AMENDED COMPLAINT

COMES NOW, Plaintiffs, and make and file this Third Amended Complaint against Defendants for violating the laws of the United States and the State of Georgia, thereby proximately causing the excruciating pre-death pain and suffering

and the wrongful death of Antonio Devon May, on September 11, 2018, at the Fulton County, Georgia Jail in Atlanta, Georgia.

## PARTIES AND JURISDICTION

1.

Plaintiff April M. Myrick, the Administrator of the Estate of Antonio May, resides in the State of Georgia, and is subject to the jurisdiction of this court.

2.

Plaintiff April Myrick, the legal guardian of Za'Kobe K. Rickerson and Jordan I. Rickerson, minor children of Antonio May, resides in the State of Georgia, and is subject to the jurisdiction of this court.

3.

Plaintiff Sheena Pettigrew, the mother and natural guardian of Elijah Warren, minor son of Antonio May, resides in the State of Georgia, and is subject to the jurisdiction of this court.

4.

Defendant Fulton County, Georgia is within the State of Georgia and is responsible for the funding and operation of the Fulton County, Georgia Jail. Defendant Fulton County, Georgia may be served with process through Robb Pitts, Fulton County Commission Chairman at 141 Pryor Street SW10th Floor Atlanta, Georgia 30303, and is subject to the jurisdiction of this court.

5.

Defendant Fulton County Sheriff Theodore Jackson (hereinafter referred to as "Sheriff") is responsible for the supervision, maintenance and operation of the

Fulton County Jail and may be served with process at 185 Central Ave. S.W. Atlanta, Georgia 30303, and is subject to the jurisdiction of this court.

6.

Defendant Jason Roache is a detention officer and DART ("Direct Action Response Team") member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

7.

Defendant Lt. Derrick Paige is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

8.

Defendant Jamillah Saadiq is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

9.

Defendant Jamel Goodwine is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

10.

Defendant William Whitaker is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

11.

Defendant Aaron Cook is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

12.

Defendant Omar Jackson is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

13.

Defendant Jermaine Copeland is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

14.

Defendant Kenesia Strowder is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

15.

Defendant Jordan Wilcher is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

16.

Defendant Guito Delacruz is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

17.

Defendant Jasmine Rowe is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

18.

Defendant Mary Stovall is a detention officer and DART member at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

19.

Defendant Myron Bush is a detention officer, Sergeant and supervisor at the Fulton County, GA Jail, and is subject to the jurisdiction of this court.

20.

On October 3, 2018, Plaintiffs gave ante litem notice to Fulton County and Sheriff Theodore Jackson, and Plaintiffs have complied with all conditions precedent to bringing this action. (A copy of the ante litem notice is attached as Exhibit "A.")

21.

Defendants above have waived any defense of sovereign immunity by the purchase of liability insurance or otherwise.

22.

Defendant Naphcare, Inc. is the private inmate medical care contractor for the Fulton County Jail, and may be served with process to its registered agent at 900 Old Roswell Lakes Pkwy Suite 310, Roswell, GA, 30076, and is subject to the jurisdiction of this court.

23.

Defendant Travis Williams is an EMT employed by Naphcare, Inc., and is subject to the jurisdiction of this court.

24.

Defendant David Didier, PA is a Physician Assistant employed by Naphcare, Inc., and is subject to the jurisdiction of this court.

25.

Jurisdiction and venue are proper in this court.

## **BACKGROUND**

26.

Prior to September 11, 2018, Antonio May was a gainfully employed devoted father of three boys, Za'Kobe Rickerson, Jordan Rickerson and Elijah Warren.

27.

Despite his overall positive and happy demeanor, prior to September 11, 2018, Antonio May struggled with mental health and substance abuse issues, and he was receiving substance abuse treatment and mental health counseling.

28.

Prior to September 11, 2018, Antonio May lived with his beloved uncle Bradley Bryant, Jr. before Mr. Bryant passed away due to complications from cancer.

29.

On September 11, 2018, Antonio May was having a mental health crises and was on amphetamines when he went to the American Cancer Society ("ACS") in Atlanta, Georgia and threw rocks at the windows at ACS.

30.

ACS security called the Atlanta Police Department ("APD") and reported that Mr. May was throwing rocks at its windows.

31.

When APD officers arrived, Mr. May laid down on the ground with his arms stretched out, and he was arrested peacefully.

32.

APD officers took Mr. May to Grady Hospital for medical clearance.

33.

At Grady Hospital, Mr. May was paranoid, tested positive for amphetamines and was diagnosed with Substance Abuse Psychotic Disorder.

34.

Grady Hospital released Mr. May to the Fulton County Jail, so Mr. May could be in a "structured environment and likely to be of the most benefit for him given his current meth intoxication"

35.

On the morning of September 11, 2011 at around 8:58 am Mr. May was booked into the Fulton County jail on charges of misdemeanor criminal trespass.

36.

When Mr. May arrived at the Fulton Jail he underwent medical screening by Travis Williams, a paramedic with Naphcare, Inc.

37.

Travis Williams noted that Mr. May tested positive for amphetamines and that he was suicidal.  Mr. Williams did not document telling any officers about Mr.

May's psychological and medical condition.

38.

As opposed to putting Mr. May in the Special Medical Observation Unit at the Fulton County Jail and giving him detoxifying chemical sedation, due to his mental health issues and due to him testing positive for amphetamines, the medical professionals at Naphcare, Inc. released Mr. May to the Jail deputies.

39.

Sergeant Myron Bush then placed Mr. May in a general holding cell after Mr. May exhibited signs of mental illness.

40.

Sgt. Bush did not inform the medical professionals or the officers at the Jail that he placed Mr. May in the holding cell due to his signs of mental illness.

41.

After Mr. May was placed in the holding cell, Jail detention officers were overheard by employees and inmates shouting that is was "Taser Tuesday."

42.

While in the holding cell, suicidal and on amphetamines, Mr. May allegedly removed his clothing and allegedly began masturbating.

43.

Due to Mr. May allegedly masturbating in the holding cell a decision was

made by a supervisor at the Jail to have the DART to enter Mr. May's cell and confront him. <u>In violation of jail policy NONE of the DART team members activated body cameras before force was initiated against Antonio May.</u>

44.

Immediately upon entering the cell, one of the detention officers on the DART team shot the TASER prongs into Mr. May's lower back, directly above his right buttock, without warning.

45.

A confrontation then ensued between Mr. May and six (6) members of the DART team in the holding cell.

46.

One or more of the detention officers then placed a stun gun on Mr. May's pubic hairs and close to his penis, and another deputy put a stun gun directly in his Mr. May's chest area.

47.

The detention officers beat Mr. May with closed fist strikes and sprayed pepper spray in his face.

48.

The detention officers then placed Mr. May in a restraining chair, placed a spit mask on his face and head and placed him in the shower area for

decontamination.

49.

When the water from the shower did not remove all of the pepper spray the detention officers put a water hose to Mr. May's face while he was restrained in the chair.

50.

Minutes after he was decontaminated, Mr. May underwent an inadequate medical examination by David Didier, PA, went unresponsive and died on the floor of the Fulton County Jail laying in a pool of his own blood.

51.

According to the autopsy report for Antonio D. May provided by the Fulton County, GA Medical Examiner's office, Mr. May's death was caused by Sudden Cardiovascular Collapse due to Probable Excited Delirium with Physical Restraint Use due to Acute Methamphetamine Intoxication, with Other Significant Causes Listed as Use of Conducted Electrical Device ("TASER") and exposure to Oleoresin Capsicum ("Pepper Spray").

**COUNT I:**

**42 USC § 1983 United States Constitutional Violations of Deliberate**

**Indifference and Excessive Force against JASON ROACHE,  DERRICK**

**PAIGE,  JAMILLAH SAADIQ, JAMEL GOODWINE, WILLIAM WHITAKER, AARON COOK, OMAR JACKSON, JERMAINE COPELAND, KENESIA STOWDER, JORDAN WILCHER, GUITO DELACRUZ, JASMINE ROWE, MARY STOVALL and MYRON BUSH for Causing or Contributing to the Wrongful Death of Antonio D. May**

52.

Mr. May suffered from mental disability and substance abuse, and therefor was protected under Federal Law and state law.

53.

Defendant detention officers owed Mr. May a duty to:

A.    Use no more force than reasonably necessary;

B.    Protect him from harm because of his mental illness and substance abuse;

C.    Use the TASER and pepper spray only when necessary and appropriate with due regard to safety; and

D.    Provide First Aid to Mr. May after force was used.

54.

Defendant detention officers violated their duty by using unreasonable excessive force by using a TASER, Stun Gun, Closed Fist Strikes, Pepper Spray and Spit Mask in an unnecessary and inappropriate circumstance and manner in the following ways:

A.    Used the TASER and Stun Gun repeatedly on Mr. May;

B.    Deployed TASERS in unsafe ways, with no certain and no specific limits on amounts, durations, and locations of charges deployed on Mr. May in accordance with accepted standards for safe use of the TASERS;

C.    Shot TASER in the upper torso area of Mr. May;

D.    Deployed TASERS on Mr. May more than two times in an attempt to control him while he was suffering from a psychotic breakdown;

E.    Used TASERS in combination with other uses of force, including pepper spray and closed fist strikes;

F.    Used the Taser and Stun Gun on Mr. May for pain compliance in violation of clearly established case law.

G.    Ignored the need for proper medical attention and failed to provide first aid to Mr. May after force was used and while Mr. May was having a mental health crisis and while he was clearly impaired on amphetamines, in clear violation of established case law;

H.    Failed to assess that any alleged masturbation by Mr. May, any refusal to cease masturbating by Mr. May and any refusal to follow any alleged orders to place his hands behind his back to be

placed in a restraint chair to stop him from masturbating, were due to
Mr. May's mental health issues and substance abuse, and required the
deputies to seek medical attention for Mr. May, not the use of a
TASER, Stun Guns, Pepper Spray and Closed Fist Strikes which
ultimately led to the death of Mr. May, in clear violation of
established case law.

I.    Used the TASER on Mr. May while he was on amphetamines in

      clear violation of medical guidelines.

J.    Used the TASER on Mr. May while he was having a mental health

      crises in clear violation of medical guidelines.

55.

Mr. May's death was caused by the use of force and deliberate indifference
to Mr. May's medical care by the Defendant detention officers.  The actions of the
Defendant detention officers in causing Mr. May's death were grossly negligent,
malicious, wanton, willful, and/or done with reckless disregard for the rights of
others.

56.

The violations of generally accepted law enforcement custom and practice in
this situation and the wrongful death of Mr. May were the direct and foreseeable
results of the unconstitutional excessive force by the Defendant detention officers.

57.

The negligence and gross negligence and excessive force of the Defendant detention officers entitle the Plaintiffs to recover compensatory damages for the pre-death pain and suffering incurred by Mr. May.

58.

The estate of Antonio May is entitled to recover from the Defendant detention officers all damages allowed, including but not limited to, medical and funeral expenses, pain and suffering, loss of services, protection, care, assistance, society, companionship, comfort, guidance, kindly offices and advice, among other things.

59.

The children of Antonio May are entitled to recover the full value of the life of Antonio May for their loss of the father's services, protection, care, assistance, society, companionship, comfort, guidance, kindly offices and advice, among other things.

60.

Defendant detention officers acted with malicious, deliberate, willful, wanton and reckless disregard of the constitutional rights and privileges of Mr. May, entitling Plaintiffs to recover punitive damages.

61.

As specifically alleged above, Defendant detention officers, considering their knowledge and lack of knowledge of the circumstances, used an unreasonable, unnecessary high or dangerous level of force to subdue and/or control Mr. May, and in using more or improperly dangerous force than reasonably necessary, acted in contravention of accepted law enforcement standards related to the use of force in gaining control over an unarmed Antonio May.

62.

The Defendant officers used greater force than reasonably necessary to control or subdue Mr. May, and acted with deliberate indifference to Mr. May's medical condition. The officers violated Mr. May's Fourth Amendment Right to be free from unreasonable seizure of his person, and his Fourteenth Amendment right to substantive due process precedent to the imposition of punishment or death in response to suspected criminal activity which shocks the conscience, and Eighth Amendment rights to receive adequate medical care in the jail. These rights will collectively be referred to as "United States Constitution's Fourth, Eighth and Fourteenth Amendment Rights."

63.

Defendant detention officers are not entitled to qualified immunity for the

constitutional violations alleged herein, due to the fact that no reasonable officer, acting in the circumstances and with the knowledge or lack of knowledge of the deputies as set forth above, would have inflicted the same type, quantity and level of force upon Mr. May as inflicted on Mr. May by the Defendant detention officers.

64.

Defendant detention officers' excessive use of force and corresponding deliberate indifference to Mr. May's Fourth, Eighth and Fourteenth Amendment Rights, proximately caused Mr. May's death and Plaintiffs' damages.

65.

Accordingly, The Estate of Antonio May and the children of Antonio May are entitled to recover compensatory damages, punitive damages, and all other damages allowed under law from the detention officers.

## **COUNT II:**

## **Supervisory Liability Under 42 USC § 1983 as against Defendant Fulton County, GA and Defendant Sheriff Theodore Jackson for Established Unconstitutional Ministerial Policies which led to the death of Antonio May.**

66.

Fulton County and Sheriff Jackson were negligent in that they established

unconstitutional ministerial policies and procedures such as permitting the unreasonable and impermissible use of TASERS, Stun Guns, Pepper Spray and Closed Fist Strikes on mentally ill inmates and inmates suffering from mental illness.

67.

Fulton County and Sheriff Jackson were negligent by failing to establish reasonable policies and procedures, including the training of officers in methods, techniques, and approaches designed to prevent the excessive use of force in responding to situations involving inmates suffering from substance abuse and emotionally or mentally disturbed and/or restrained inmates.

68.

Moreover, the violations of the generally accepted law enforcement custom and practice in this situation and the wrongful death of Mr. May were direct and foreseeable results clearly established and grossly inadequate supervisory and training policies and practices on the part of Fulton County and Sheriff Jackson. Fulton County and Sheriff Jackson failed to train their employees on how to properly restrain a mentally disturbed person, or how to properly use a TASER, the circumstances warranting use of a TASER and various other restraint and arrest techniques.

69.

The policies of Defendants Fulton County and Sheriff Jackson permitted the Defendant deputies to act with deliberate indifference to Mr. May who had no sense of reality and whom was impaired without the ability to control his behavior ("Impaired Person").

70.

These actions of Fulton County, GA and Sheriff Jackson were pursuant to Fulton County policy and custom and Sheriff Jackson's Jail policy and procedures and were calculated to and did deprive Mr. May of rights and privileges protected by state and federal law, including 42 USC § 1983.

71.

Based on information and belief, Fulton County, GA and Sheriff Jackson had the following ministerial policies in place (requiring no discretion on behalf of the deputies) that were with deliberate indifference to Antonio May's Fourth and Fourteenth Amendment Rights and led to Mr. May's death:

A.    Fulton County, GA and Sheriff Jackson failed to adequately hire, supervise and retain their deputies;

B.    Fulton County, GA and Sheriff Jackson failed to adequately train their deputies to employ safe, reasonable and necessary techniques

designed to prevent the encounter with Antonio May from becoming volatile or dangerous to the deputies and Mr. May.

C.    Fulton County, GA and Sheriff Jackson failed to adequately train their deputies to employ safe, reasonable and necessary techniques designed to prevent encounters with Impaired Persons who are or become volatile, violent or dangerous to the deputies and to Mr. May;

D.    Fulton County, GA and Sheriff Jackson failed to adequately train their deputies in the safe, reasonable, effective, and appropriate modalities and measures of force to be used upon Impaired Persons.

E.    Fulton County and Sheriff Jackson permitted a custom of excessive force by permitting unwarranted use of TASERS on inmates as evidenced by jail staff and inmates hearing the deputies use the term "Taser Tuesday" on the day Mr. May was TASED at the jail, implying that they were anxious to use TASERS on inmates, as opposed to using the TASER as a last resort based on its serious and deadly consequences.

F.    Fulton County, GA and Sheriff Jackson have polices permitting deputies to utilize the TASER and Stun Gun repeatedly on a single subject;

G.     Fulton County, GA and Sheriff Jackson have policies that expressly and specifically permit deputies to deploy their TASERS in unsafe ways, with no certain and specific limits on amounts, durations, and locations of charges permitted to be deployed on a given person in accordance with accepted standards for safe use of the TASERS;

H.     Fulton County, GA and Sheriff Jackson have policies that permit the unadvised shooting of TASERS in the upper torso area;

I.     Fulton County, GA and Sheriff Jackson have policies that permit deputies to deploy TASERS in attempt to control people suffering from a psychotic break more than two times, even if the use of the TASER does not successfully subdue the Impaired Person.

J.     Fulton County, GA and Sheriff Jackson have policies that permit the use of TASERS in combination with other uses of force, including pepper spray and closed fist strikes which is contrary to acceptable TASER and reasonable law enforcement standards.

K.     Fulton County, GA and Sheriff Jackson have polices which permitted using the TASER and Stun Gun on Mr. May for pain compliance in violation of clearly established case law.

L.     Fulton County, GA and Sheriff Jackson have policies that permitted

the deputies to ignore the need for proper medical attention for Mr. May while he was having a mental health crisis and while he was clearly impaired on amphetamines, and relied solely on Naphcare, Inc. to be responsible for Mr. May's care while Mr. May was in the holding cell in clear violation of established Constitutional principles and case law;

M.    Fulton County, GA and Sheriff Jackson had inadequate polices and training in place that did not guide the deputies to assess that any alleged masturbation by Mr. May,  any refusal to cease masturbating by Mr. May and any refusal to follow any alleged orders to place his hands behind his back to be placed in a restraint chair to stop him from masturbating, were due to  Mr. May's mental health issued and substance abuse that required the deputies to seek medical attention for Mr. May, not the use of a TASER, Stun Guns, Pepper Spray and Closed Fist Strikes which ultimately led to the death of Mr. May, in clear violation of established Constitutional principles and case law;

N.    Fulton County, GA and Sheriff Jackson have policies that permitted using the TASER on Mr. May while he was on amphetamines in clear violation of medical guidelines.

O.    Fulton County, GA and Sheriff Jackson had polices in place that permitted using the TASER on Mr. May while he was having a

mental health crises in clear violation of medical guidelines.

72.

The policies of Fulton County, GA and Sheriff Jackson were deliberately indifferent to the Fourth, Eighth and Fourteenth Amendment Rights of Antonio D. May, and were the moving force which led to and caused the death of Mr. May, in violation of clearly established case law.

73.

Fulton County, GA and Sheriff Jackson's deliberate indifference to the Fourth, Eighth and Fourteenth Amendment Rights of Impaired Persons through their failure or failures to train as alleged above are failures of policy, widespread practice, and/or custom.

74.

Fulton County, GA and Sheriff Jackson systematic training failure or failures as alleged above proximately caused Antonio May's death in that they proximately, directly and foreseeably caused Defendant deputies to use force that was foreseeably ineffective at subduing him, instead of safely gaining control of him or simply waiting for him to tire or calm down.

75.

Upon Information and belief Fulton County, GA and Sheriff Jackson knew

of, ratified and/or condoned the conduct described herein.

76.

Due to the systematic, unconstitutional training practices or policies alleged herein, Fulton County, GA and Sheriff Jackson are liable for the Plaintiffs damages.

77.

Although Fulton County contracts medical services to a private corporation, that private corporation is not responsible for the provision of all medical services at the jail.

78.

Specifically, Sheriff Jackson must serve as a liaison between inmates and medical staff, must alert medical staff to inmates' medical concerns, and must assist medical staff in triage, communication, and monitoring inmates under medical supervision.

79.

By implementing these quasi-medical decisions, Sheriff Jackson acts on behalf of Fulton County.

80.

Fulton County has a statutory obligation to provide funding for, and to be accountable to the taxpayers for, the operation of the Fulton County Jail and to provide medical care to inmates.

81.

Fulton County, GA cannot abdicate its fiscal responsibility to fund the Fulton County Jail and provide medical care to its inmates by denying it has any responsibility to ensure that the Jail is run according to Constitutional principles and that its inmates receive proper medical care.

82.

Fulton County, GA has paid numerous settlements and judgments based on the unconstitutional actions of the Fulton Sheriff and Sheriff deputies.

## COUNT III:

## Discrimination under the Americans With Disability/ Act and Rehabilitation Act Against Sheriff Jackson in his Official Capacity and against Fulton County, Georgia.

83.

Both Fulton County, GA and the Sheriff Jackson are considered public entities under 42 U. S. C. § 12131(1).

84.

As recipients of federal funds, the Sheriff and Fulton County are required by Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794) to make reasonable accommodations to persons with disabilities in their facilities, program activities and who receive their services. Such recipients are further required to modify such facilities, services, and

programs as necessary to accomplish this purpose. Accordingly, these Defendants are subject to the mandate of Section 504.

85.

Mr. May was disabled within the meaning of the ADA, 42 U.S.C. § 12131 (2), because he had a mental impairment that substantially limits one or more of his major life activities.

86.

Fulton County is statutorily obligated to provide medical treatment to individuals incarcerated in the Fulton County Jail. *See* O.C.G.A. § 42-5-2.

87.

Fulton County contracts with Naphcare, Inc. to provide health services in the jail.

88.

Fulton County has the sole authority to determine the medical contractor for the jail, and determines the terms of the contract to provide services.

89.

The Sheriff is responsible for overseeing the jail, and to ensure that medical care is summoned by deputies if no medical personnel are available.

90.

The Sheriff acts as an arm of the County insofar as he sets policy and oversees practices which relate to summoning medical care for individuals in medical need, and for supervising individuals who are suicidal.

91.

As detailed in the factual allegations above , both the officers and the medical personnel who were involved in  Mr. May's confinement and care acted with discriminatory animus resulting from the fact that Mr. May was suicidal and on amphetamines.

92.

Mr. May should have been provided accommodations to the jail's medical observation unit, and such accommodations could have been provided without constituting a substantial alteration in the jail's services.

93.

The failure to provide Mr. May with reasonable medical accommodations proximately caused his death and violated the ADA, 42 U.S.C. § 12131 (2).

## **COUNT V:**

## **MEDICAL NEGLIGENCE AGAINST NAPHCARE, INC. AND MEDICAL NEGLIGENCE AND DELIBARATE INDIFFERENCE AGAINST TRAVIS WILLIAMS, EMT AND DAVID DIDIER, PA.**

94.

Travis Williams, David Didier, and additional medical professionals employed by Naphcare, Inc. failed to exercise that degree of skill and care ordinarily required by the medical profession in general, under like conditions, and similar circumstances in their treatment of Antonio May.

95.

Travis Williams, David Didier, and the additional medical professionals employed at Naphcare, Inc. deviated from the standard of care by failing to:

1) It was a deviation of the standard of care and deliberate indifference for Mr. Travis Williams, a paramedic employed by Naphcare, Inc., to not involve other medical professionals (LPN, RN, PA, MD) and seek a transfer of Mr. May to a higher level of medical care at the Fulton Jail when Mr. Williams performed the intake of Mr. May at the Jail, and learned that Mr. May tested positive for amphetamines and had suicidal ideation;

2) It was a deviation in the standard of care and deliberate indifference for the medical professionals at the Fulton County Jail and Naphcare, Inc. to not closely monitor Mr. May in a medical environment at the Jail where he could be medically observed (as opposed to a holding cell) when the medical

professionals became aware that Mr. May tested positive for amphetamines and that he had suicidal ideation.

3)    It was a deviation in the standard of care and deliberate indifference for the medical professionals at the Fulton County Jail and Naphcare, Inc. to not place Mr. May on detox protocol/chemical sedation when he entered the Fulton County Jail after he tested positive for amphetamines.

4)    It was a deviation in the standard of care and deliberate indifference for the David Didier to perform an inadequate medical examination on Mr. May after force was used on him by the officers.

96.

The breaches of the standard of care by the medical professionals acting as agents and/or employees of Naphcare, Inc. were the proximate causes and the causes in fact of the death of Antonio May.

97.

The negligence of the employees and agents employed by Naphcare, Inc. includes, but is not limited to, the negligent acts and omissions set forth in the affidavit of Joseph William Wright, M.D. CCHP-P and Timothy Hughes, MD. filed contemporaneously with this complaint, pursuant to the requirements of O.C.G.A. § 9-11-9.1, and is incorporated herein as if fully restated.

98.

The aforementioned actions of Travis Williams and David Didier also establish that they were deliberately indifferent to Antonio May's serious medical condition in violation of the Eighth and Fourteenth Amendment of the United States Constitution.

99.

At all times relevant to this action, the medical professionals that treated Antonio May were acting as agents or employees of Defendant Naphcare, Inc.

100.

Defendant Naphcare, Inc. is responsible for the negligence of the medical professionals that treated Mr. May under the doctrine of *respondeat superior*, agency or apparent agency.

## **Count VI:**
## **Attorney's Fees**

101.

Plaintiffs seek attorneys' fees against all Defendants under O.C.G.A. § 13-6-11 as Defendants have acted in bad faith, been stubbornly litigious, and caused the plaintiffs unnecessary trouble and expense.

102.

Plaintiffs also seek attorney's fees under 2 U.S.C. § 1988(b), 42 U.S.C. § 12205, and 29 U.S.C. § 794a(b) or their causes of action under 42 U.S.C. § 1983,

the Americans with Disabilities Act, and the Rehabilitation Act.

**WHEREFORE**, Plaintiffs pray that they have a trial on all issues and judgment against Defendants as follows:

(a)     That Plaintiffs recover the full value of the life of the decedent;

(b)     That Plaintiffs recover for the decedent's pre-death mental and physical pain and suffering, funeral expenses and medical expenses;

(c)     Award punitive damages against each Defendant who has been sued in their individual and corporate capacity;

(d)     Award reasonable attorney's fees, expenses, and costs of litigation;

(e)     That Plaintiffs recover such other and further relief as is just and proper;

(f)     That all issues be tried before a jury.

This 26th day of March, 2021.

<div style="margin-left:30%">

Respectfully Submitted,


/s/ Michael D. Harper
MICHAEL D. HARPER
Georgia Bar No. 328378
Attorney for Plaintiff April M. Myrick, Administrator of
the Estate of Antonio D. May, and April M. Myrick,
Legal Guardian of Za'Kobe K. Rickerson and Jordan I.
Rickerson, minor children of Antonio May.

</div>

Michael D. Harper, P.C.
3481 Lakeside Dr. NE, Suite 2406
Atlanta, GA 30326
Telephone: (404) 271-6618
Email: mharper@mharperlaw.com

/s/ Tremaine Teddy Reese
TREMAINE TEDDY REESE
GEORGIA BAR NUMBER: 503391
Attorney for Sheena Pettigrew, Natural
and Legal Guardian of Elijah Warren, minor child of
Antonio May.


The Reese Firm, LLC
1318 Stark Avenue
Columbus, Georgia 31906
Telephone: (706) 341-1822
Facsimile:   (706) 243-6446
Email: teddyreese@teddyreesefirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing Amended Complaint with the Clerk of Court using the CM/ECF system which will automatically send the Amended Complaint, and email notifications of such filing to the parties and/or attorneys of record.

This 26th day of March, 2021.

Respectfully Submitted,

<u>/s/ Michael D. Harper</u>
MICHAEL D. HARPER
Georgia Bar No. 328378
Attorney for Plaintiff April M. Myrick, Administrator of the Estate of Antonio D. May, and April M. Myrick, Legal Guardian of Za'Kobe K. Rickerson and Jordan I. Rickerson, minor children of Antonio May.

Michael D. Harper, P.C.
3481 Lakeside Dr. NE, Suite 2406
Atlanta, GA 30326
Telephone: (404) 271-6618
Facsimile: (404) 600-2146
Email: mharper@mharperlaw.com

<u>/s/ Tremaine Teddy Reese</u>
TREMAINE TEDDY REESE
GEORGIA BAR NUMBER: 503391
Attorney for Sheena Pettigrew, Natural
and Legal Guardian of Elijah Warren, minor child of
Antonio May.


The Reese Firm, LLC
1318 Stark Avenue
Columbus, Georgia 31906
Telephone: (706) 341-1822
Facsimile:   (706) 243-6446
Email: teddyreese@teddyreesefirm.com