## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| The Estate of Antonio Devon May, et, al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 1:19-CV-02440-TWT |
| v. | ) ) | |
| Jason Roache, Derrick Paige, Jamel Goodwine, William Whitaker, Aaron Cook, Omar Jackson, Jermaine Copeland, Kenesia Stowder, Guito Delacruz, Naphcare, Inc., and Travis Williams, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION TO EXCLUDE OPINION TESTIMONY OF RANDY FOSTER

Defendants Roache, Paige, Goodwine, Whitaker, Cook, Jackson, Copeland, Strowder, and Delacruz (the "Fulton County Sheriff's Officer Defendants") file this brief in support of their Motion To Exclude Opinion Testimony of Plaintiffs' purported expert Randy Foster ("Mr. Foster"). In support of this brief, the Fulton County Sheriff's Officer Defendants rely upon the arguments and exhibits provided in support.

1

## I.     INTRODUCTION

This case involves the tragic death of Antonio Devon May in the Fulton County Jail on September 11, 2018. [Doc. No. 55] Mr. May's family and others have brought a lawsuit against the officers who were present when he died, as well as the Sheriff's contract medical provider Naphcare, Inc. and a Naphcare employee. Plaintiffs asserted that some of the officers used excessive force against Inmate May in violation of 42 U.S.C. § 1983 and Plaintiffs have potentially attempted to assert other claims against the officers. [Doc. No. 55]

When a plaintiff alleges that a defendant used excessive force, expert testimony is admissible to demonstrate the compliance with or violation of the "prevailing standards in the field of law enforcement." *Ayers v. Harrison*, 650 Fed. Appx. 709, 719 (11th Cir. 2016) (quoting *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990)). For an expert's opinion to be admissible, the plaintiff must demonstrate that the expert is qualified, his opinions are reliable, and his opinions must be helpful to the trier of fact. *See generally* Fed. R. Evid. 702. Even with such bona fides, the expert may not invade the province of the jury. *United States v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992) (whether the forced used was "reasonable" or "justified" is beyond an expert's testimonial ability) (citing *Samples*, 916 F.2d at 1551); *see also Middleton v. Morgan*, 3:17CV346-TKW-MJF, 2019 WL

10630840 (N.D. Fla. Nov. 1, 2019) (opinion about "objectively unreasonable" and "excessive" force invaded the province of the jury).

Plaintiffs' purported expert, Randy Foster, fails all of the prerequisites necessary to assist the trier of fact in this case. He is not qualified, his opinions and methodology are not reliable, his opinions are not helpful, and his opinions conclusively and universally invade the province of the jury. In addition, his report is incomplete, inaccurate, and should be excluded. The entirety of Mr. Foster's testimony should be excluded.

## II.    FACTUAL BACKGROUND

Prior to Mr. May's death, he was involved in a use of force with some of the Sheriff's Officer Defendants. [Doc. No. 55] The altercation involved use of non-lethal devices and techniques to gain control and compliance from Inmate May, including conductive energy weapons ("Tasers"), oleoresin capsicum spray, restraints, a spit mask, and a chair to transport him. [Doc. No. 55]

Plaintiffs identified Mr. Foster as an expert in this matter after Mr. Foster reached out and initiated contact with Plaintiffs' counsel about the death of Antonio May. (Deposition of Randy Foster, hereinafter "Foster" attached hereto as "Exhibit A," 12:20-13:25). Mr. Foster learned about this case by reviewing material on a website called "Killed by the Police," and thereafter reached out to Plaintiffs' counsel. (Foster 11:12-12:3).  Mr. Foster, who has only testified on behalf of injured

civil plaintiffs and criminal defendants, was retained and provided an expert report. He completed and submitted his report on March 25, 2021 and has provided no changes or additions to that document since submission. (Foster 32:4-12). (*See* Expert Report of Randy Foster, hereinafter "Report" attached hereto as "Exhibit B.").

According to his report, Mr. Foster was retained to "opine on Fulton County Sheriff's use of force in Antonio Devon May detention on September 11, 2018 by Officers Whitaker, Cook, Saadiq, Jackson, Roache, Delacruz, Copeland, Strowder." (Report, 5) (Foster 129:14-130:10). According to Plaintiffs' counsel, Mr. Foster was designated to testify about "excessive force." (Foster 147:19-22).

In his report, Mr. Foster offered his ultimate conclusion that "…it is my opinion that Fulton County Sheriff's detention Officers Jackson, Cook, Whitaker, Strowder, Roache, Delacruz, Copeland used excessive use of force to gain compliance from Antonio May." (Report, 5) (Foster 130:12-20; 133:11-134:4). Mr. Foster went on to provide at least ten other opinions concluding that officers used "excessive force." (Report, 6, 8, 9, 10, 11, 13).  He also offered numerous opinions relating to his interpretation of the events and the materials he reviewed, ostensibly in support of its ultimate legal conclusion. (Report, e.g.).

In the creation of his report, Mr. Foster relied upon his "experience, and my training, and the facts that I received from this case," which were provided to him

4

by Plaintiff's counsel. (Foster 33:6-23; 44:14-17; 125:23-136:10). Mr. Foster did not rely on any articles, treatises, publications, or presentations in forming his opinions. (Foster 45:15-18). Mr. Foster did not review the deposition testimony of any of the parties involved. (Foster 140:21-24). The materials he received from Plaintiff's counsel provide the entire factual basis for the conclusions in his report. (152:6-8).

## III.    STANDARD OF REVIEW

The admission of expert testimony is controlled by Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 was amended in response to the Supreme Court's decisions in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Those opinions compel district courts to perform a "gatekeeping" function before the admission of expert testimony. *Daubert*, 509 U.S. at 597.

The Eleventh Circuit Court of Appeals has explained that a district court fulfills the gatekeeping function by engaging in a three part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The requirements of this rule can be grouped in the three broad categories: qualifications, reliability, and helpfulness. *Id.* The district court is tasked with analyzing these factors in a "rigorous inquiry," and "[t]he importance of *Daubert's* gatekeeping requirement cannot be overstated." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005); *Frazier*, 387 F.3d at 1260.

While there will often be some overlap between these concepts of qualification, reliability, and helpfulness, they are distinct concepts that courts should be careful not to conflate. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). The burden of establishing that these requirements are met rests with the proponent of the expert testimony, and not the *Daubert* challenger. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002): *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.

1999) (the party offering the expert has the burden of satisfying these three elements by a preponderance of the evidence).

Thus, the burden is upon the Plaintiffs in this case to demonstrate that Mr. Foster is qualified, that his opinions are reliable, and that his proposed testimony and report are helpful.

## IV.    ARGUMENT

### A.    Mr. Foster is not qualified.

Mr. Foster has not demonstrated that he is qualified to be an expert in the "use of force," particularly in a correctional setting. Rule 702 permits a witness to qualify as an expert based on his "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. These qualifications must correlate closely with the subject matter of the proposed testimony. *See e.g. Montgomery v. Nova*, 178 F.3d 1282, 1303 (11th Cir. 1999) (excluding a proposed expert whose expertise was "distinguishable" from his proposed testimony).

> Although the proffered testimony is non-scientific, the Court is obligated to evaluate the expert's qualifications as carefully as it would those of a scientist to ensure that in finding an expert qualified, the Court is not simply "taking the expert's word for it." *Toscano v. Case*, No. 11–4121(FSH), 2013 WL 5333206, at *7 (D.N.J. Sept.20, 2013) (quoting Rule 702's advisory committee's note (2000 amends.)). Moreover, the expert's area of expertise must include the specific subject matter about which he will testify. *See id.* (noting that a proffered expert who is a police officer is not necessarily qualified to opine on all law enforcement issues).

7

*Desai v. Farmer*, 5:12-CV-495-OC-34PRL, 2014 WL 5473564, at *3 (M.D. Fla. Oct. 28, 2014). "[F]or an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009).

Mr. Foster relies entirely on his "experience" and "training" in proffering his opinions. (Foster 33:6-23; 44:14-17). Mr. Foster has earned a certificate in criminal justice, but does not have any higher education. (Foster 75:15-25) (Report, 5). Mr. Foster did not rely on any correctional standards of care. (Foster 121:21-23; 217:10-218:17). Mr. Foster is not a member of and did not rely upon any of the accrediting or oversight organizations with expertise in correctional institutions, including the American Correctional Association, the American Jail Association, the Commission for the Accreditation of Law Enforcement Agencies (CALEA), the National Commission on Correctional Healthcare, or the National Sheriff's Association. (Foster 121:21-124:4). Mr. Foster is also not certified with the Georgia Peace Officer Standards Training Council ("POST"). (Foster 98:2-8). Mr. Foster has not authored, did not rely upon, and did not provide any articles, treatises, publications or presentations in support of his opinions. (Foster 45:15-18; 85:14-19; 98:9-25; 188:11-189:7).

Mr. Foster's report states that he has 25 years of law enforcement experience. (Report, 3). However, Mr. Foster's relevant experience, involving a correctional

institution of any kind, is far more limited. (Foster 195:3-196:16)(Report, unpaginated 30 of 32). Mr. Foster managed the "largers [largest] cell block operation in the U.S. Marshals Service, DC Superior Court Cellblock. On avg. 350 prisoners a day." (Report, 3). Mr. Foster estimated that he managed the cell block for "probably three" or "three and a half years." (Foster 78:16-21).[1]  Even this experience is of limited value in assessing appropriateness of force at the ground level of directly supervising dangerous inmates. Mr. Foster's role in managing the cell block consisted of managing 20-30 people who worked in the cell block. (Foster 75:16-76:5; 76:20-77:3).

Mr. Foster's Report does not identify that his experience as a U.S. Marshal included any direct correctional custody experience. (Report, unpaginated 30 of 32). Indeed, Mr. Foster's only work as a correctional officer was during a three month position with the Florida Department of Juvenile Justice as a juvenile detention officer after his departure from the U.S. Marshal's Service. (Report, unpaginated 29 of 32). He has never worked in Georgia and has not testified that he has ever performed the duties of a detention officer. Before taking a more senior supervisory role, Mr. Foster "transported prisoners; I arrest -- make arrests on the streets for fugitive arrests, protection of the courts, and -- and seizing of property." (Foster

---

[1] Each of the Fulton County Sheriffs Officer Defendants in his case have more experience working in a correctional setting than Mr. Foster.

196:13-16). This experience is, at best, only marginally relevant to the question whether the correctional officers in this case used force within the standard of case in a custodial setting involving the specific considerations that were present. *See e.g. United States v. Hirschberg*, 988 F.2d 1509, 1513–14 (7th Cir. 1993) (finding that Illinois police detective could not opine as to practices of Miami police detective because the witness's testimony was not relevant and his opinion was not a reasoned decision drawn from a "special skill, knowledge, or experience").

Since 2014, Mr. Foster has not worked in law enforcement in any capacity. (Report, unpaginated 29-30 of 32). He attended an online training class in 2017 relating to the operation of transport and restraint chairs, but is not been certified as a trainer. (Foster 96:12-98:1).[2] He is also not a Taser-certified trainer. (Foster 165:19-21). Mr. Foster was apparently authorized to train others in the use of OC spray in 1988, but has not taught that class since that time. (Foster 85:6-13).

Mr. Foster testified that he has been proffered as an expert in a correctional environment, such as a jail or prison, twice. (Foster 61:15-62:19). One of those

---

[2] Mr. Foster testified that this training program taught by the manufacturer consisted of an online class lasting approximately two hours and requiring him to pass a test of multiple choice and fill in the blank questions with eighty percent accuracy. (Foster 89:12-91:17) Since completing the program, he has not been employed in law enforcement and has not used the chair in a real world setting. (Foster 91:25-92:19) Prior to training, Mr. Foster's chair experience consisted of supervising people who were trained in the use of restraint chairs and authorizing the purchase of chairs. (Foster 96:18-97:16)

matters involved an alleged use for force during an arrest and another involved an alleged sexual assault during an interstate prisoner transport. (Foster 61:24-25; 49:18-50:10; 52:10-21).[3] Mr. Foster identifies one case in which he alleges that he was "qualified as an expert." (Report, 3). In that case, which involved the standard of care for handcuffing during an arrest, Mr. Foster's report was admitted by the district court because, unlike this case, he "articulate[d] and reference[d] a standard of care by which the defendant's actions can be measured." *Taylor v. Guida*, CV 17-123 (RBW), 2019 WL 4750366, at *6 (D.D.C. Sept. 30, 2019). Mr. Foster did not reference or describe any standards of care in this case. In sum, Mr. Foster has only been allowed by a federal court to testify as an expert once, in an unrelated matter, in a situation in which he actually provided an identifiable metric and supporting authority to form the basis for his conclusions.

In the present case, Mr. Foster has been tendered to testify about Defendants' "use of force" and "excessive force." (Report, 5) (Foster 147:5-6; 19-24). His training does not demonstrate expertise in the uses of force alleged in this case, namely Taser, OC spray, and transport chairs. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed

---

[3] The case before us does not involve an arrest and does not involve a sexual assault.

testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 660 (S.D. Fla. 2012)(quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F. Supp. 2d 1308, 1314 -16 (N.D. Ga. 2002)). Mr. Foster's training on the use of Tasers is no greater than that of any person qualified to use a Taser, which includes all of the Defendants, and his opinions in this regard are entitled to even less weight because there is no evidence that he ever deployed a Taser in the field, etc. Mr. Foster's only training in transport and restraint chairs was a single online class, conducted after he retired from law enforcement. While qualified to train others on the use of OC spray in 1988, Mr. Foster has not done so in more than thirty-two years.  Additionally, Mr. Foster did not identify or reference any industry standards, generally accepted principles, or standards of care regarding Tasers, OC spray, or transport chairs. He has not demonstrated that his training qualifies him to offer expert testimony relating to the force used in this case.

Further, Mr. Foster is not qualified to testify regarding "excessive force," as proffered by Plaintiffs' counsel. (Foster 147:19-22). Mr. Foster has not attended law school. (Foster145:11-19). He has not passed the bar in any state. (Foster 147:5-6; 19-24). Mr. Foster went so far as to admit that "I'm not an expert in the 4th, 5th, 6th, 8th – any amendment. I'm not an expert in any of the amendments in the United States." (Foster 146:9-12). Mr. Foster also volunteered that he is not an expert in the legal standard of negligence. (Foster 149; 20-22). He cited no law or legal standard

in his report and did not discuss or reference a single court case in his testimony or report. (Foster 150:8-14). This is a case involving claims of excessive force and, potentially, negligence. [Doc. No. 55] Plaintiffs have presented Mr. Foster to testify on the topic of "excessive force." Mr. Foster's admissions demonstrate a lack of qualification and require his exclusion.

**B.    Foster's opinions are not reliable.**

Under Rule 702, expert testimony is admissible only if "the testimony is based on sufficient facts or data; ... the testimony is the product of reliable principles and methods; and ... the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d) (alterations added). Accordingly, a witness "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Frazier*, 387 F.3d at 1261; *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1336 (11th Cir. 2010) (It is "proper" and "necessary" for the trial judge "to focus on the reliability" of a proffered expert's "sources and methods.").

In *Kumho Tire*, the Supreme Court emphasized "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152. While the inquiry

is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95

First, Mr. Foster's opinions are not based on "sufficient facts or data." Fed R. Evid 702(b). He admitted that he reviewed the discovery material provided by Plaintiffs' counsel and nothing else. (Foster 45:14-46:18; 150:15-153:2). He also admitted that he did not review any of the thirteen officer depositions taken in this case. (Foster 140:21-24). Mr. Foster did not ask to see any other material in this case. (Foster 127:19-22). When combined with the complete absence of other authority that Mr. Foster relied upon, it is clear that his opinions are based entirely upon the material fed to him by Plaintiffs.

Further, Mr. Foster testified in response to a hypothetical question, that even if other evidence contradicted his opinions, he would not change those opinions. (Foster 141:14-142:5; 160:6-13). "Conclusions and methodology are not entirely distinct from one another.... [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

In this case, Mr. Foster's opinions are the epitome of *ipse dixit* statements.

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's

14

> gatekeeping function requires more than simply "taking the expert's word for it." *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

*See* Fed. R. Evid. 702 (Advisory Committee Notes 2000 Amendment). Mr. Foster's opinions rely upon a limited sample of information, passed through the nebulous analysis of Mr. Foster's "training" and "experience," and then presented as factual and legal conclusions. No expert, including Mr. Foster, can leap from assertion to conclusion without citing their sources, *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005), much less without providing a reasoned basis for his or her ultimate conclusions.

Contrary to the scientific method, when asked if contrary information passed through that same analysis would have changed the result, Mr. Foster said it would not. (Foster 160:6-13). Mr. Foster's limited data, the absence of other material to support his analysis, and the consistent conclusion that the officers used "excessive force" regardless of the facts presented, demonstrate that Mr. Foster's analysis is unreliable and his testimony should be excluded.

## C.   Foster's opinions are not helpful

Finally, the district court's gatekeeping function requires a determination that an expert's opinions would be helpful. *See* Fed. R. Evid. 702(a).  In this case, it is clear that Mr. Foster's opinions will not assist the trier of fact. "Expert evidence that

consists merely of legal conclusions is usually not helpful, for purposes of this requirement, when it unduly invades the province of the jury by essentially telling the jury what result to reach on an ultimate issue." *Washington v. City of Waldo, Florida*, 1:15CV73-MW/GRJ, 2016 WL 3545909 at *3 (N.D. Fla. Mar. 1, 2016) (citing *Samples*, 916 F.2d at 1551). Indeed, pure questions of law are "not a matter subject to expert testimony." *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) (citing *Freund v. Butterworth*, 165 F.3d 839, 863 n.34 (11th Cir. 1999)).

### 1.    Mr. Foster's purported expert opinions are not helpful.

In addition to being outside of any demonstrated qualifications and based on unexplained methodology, Mr. Foster's opinions are not helpful. The format of Mr. Foster's report makes deciphering his expert opinions difficult.  (Report). Parsing the report provides some expert opinions which are clearly legal opinions and the remaining material represents Mr. Foster's interpretation of the facts. The legal opinions consist of:

> (a)    "...it is my opinion that Fulton County Sheriff's detention Officers Jackson, Cook, Whitaker, Strowder, Roache, Delacruz, Copeland used excessive use of force to gain compliance from Antonio May." (Report, 5).

(b)      *"A number of the actions they took in the course of using force on Antonio May failed to comply with Officer Cook initial contact with Antonio May, and Fulton County Detention officer use of excessive and unnecessary force on Antonio May."* (Report, 5).

(c)      *"Therefore, the initial approach by multiple officers to enter the cell with less than lethal weapons (taser; oc sprays) was excessive use of force because it escalated to excessive use of force."* (Report, 6).

(d)      *"The video shows five or six officers in single file entering May's cell at the same time, this behavior by the officers is indicative of excessive use of force."* (Report, 6).

(e)      *"My opinion that the use of X2 TASER was excessive use of force…."* (Report, 8).

(f)      *"It is My opinion based on my training and 25yrs of law enforcement that using OC spray while Mr. May legs held down and being strikes in the face is excessive use of force, and an objectively reasonable officer would not do that to Mr. May."* (Report, 9).

       (g)     *"It is My opinion striking Mr. May while he was being held down, harmless, controlled, and contained by six officers is clearly excessive. Striking Mr. May while he is being held down, harmless, controlled and contained by six officers, suffering from OC Spray in his facial region is clearly excessive use of force and even more egregious." (Report, 10).*

       (h)     *"It is my opinion that the Fulton County Officers used The Safety Restraint Chair as an instrument to punish and discipline Mr. May which made their use of the The Safety Restraint Chair excessive force." (Report, 11).*

       (i)     *"It is my opinion that Fulton County officers used the Spit Mask as an instrument of excessive force to punish Mr. May." (Report, 13).*

       (j)     *"For all these reasons it is my opinion that the Fulton County officers used excessive force against Antonio May and are inconsistent with well accepted use of force practices." (Report, 13).*

These opinions are unvarnished legal conclusions. *Myers*, 972 F.2d at 1577 ("whether force was 'reasonable' or 'justified' invades the province of the jury) (citing *Samples*, 916 F.2d at 1551; *Middleton*, 2019 WL 10630840 (opinion about "objectively unreasonable" and "excessive" force invaded the province of the jury); *see also Davis v. Duran*, 277 F.R.D. 362, 371 (N.D. Ill. 2011) (experts' opinions on excessive force are "inadmissible under Rule 702 because they are simply characterizations of law, which do nothing more than purport to instruct the jury as

to the proper standard for reasonableness in use of force cases."). The Eleventh Circuit Court of Appeals has consistently reaffirmed that the question of whether force is "excessive" is a "pure question of law." *Myers*, 713 F.3d at 1328 (citing *Scott v. Harris*, 550 U.S. 372, 381, n. 8 (2007). That question "is not a matter subject to expert testimony." *Freund*, 165 F.3d at 863 n. 34 (stating that whether a law firm rendered ineffective assistance of counsel under a given set of facts is a question of law that is not subject to expert testimony).

In addition to being squarely within the province of the jury, these opinions are beyond the qualifications of Mr. Foster, who admitted that he is not an expert in "any amendment" and neither cited nor referred to any law in support of his opinions. (Foster 146:9-12; 149; 20-22; 150:8-14). Finally, Mr. Foster's expert opinions are based on nothing except his non-legal, non-custodial "experience" and "training," which also makes them unreliable.[4] Thus, all of Mr. Foster's expert opinions, which consist of the majority of his report, should be excluded.

---

[4] To the extent that Mr. Foster makes one reference to "well accepted use of force practices," he does not define those practices, or explain where they are "well accepted." This opinion might be a reasonable expert opinion under some circumstances, but without any foundation, it is as unreliable as the remainder of report. *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

## 2.    Mr. Foster's other opinions and interpretations are not helpful.

In addition to the proposed expert opinions, the remainder of Mr. Foster's report consists of his interpretation of discovery material which is not supported by any allegations of expertise. "[I]f an expert opinion does not have a 'valid scientific connection to the pertinent inquiry' it should be excluded because there is no 'fit.'" *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1232 (11th Cir. 2009).  Mr. Foster's interpretation of discovery material is not within the scope of his alleged expertise and therefore should be excluded. *United States v. Norris*, 1:05-CR-479-JTC/AJB, 2007 WL 9655845, at *16 (N.D. Ga. May 8, 2007), *report and recommendation adopted,* 1:05-CR-479-JTC, 2007 WL 9657880 (N.D. Ga. Oct. 3, 2007) ("Expert testimony is not relevant if the expert is offering a personal evaluation of the testimony and credibility of others or the motivations of the parties.").

For example, Mr. Foster relies repeatedly upon video of the incident and interprets it in his report. (Foster 136:25-137:4; 139:17-20; 140:9-20) (Report, 6). To assist the trier of fact, expert testimony must concern "matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262.  Mr. Foster's review of the video and his conclusions do not demonstrate anything beyond the ability of the average lay person. Therefore his conclusions about what is

contained in the video is neither within his purported "use of force" expertise, nor relevant. For example, Mr. Foster's report states "The video shows five or six officers in single file entering May's cell at the same time, this behavior by the officers is indicative of excessive use of force." (Report, 6). Mr. Foster admits that he was not retained as a video interpretation expert. (Foster 217:1-3). There is nothing to indicate that a jury could not view the video and make its own conclusion.

In *Kirksey v. Schindler Elevator Corp.*, CV 15-0115-WS-N, 2016 WL 5239874, at *8 (S.D. Ala. Sept. 21, 2016), the district court examined the proposed expertise of police officers who examined video of an incident. The Court rejected the testimony holding:

> Of course, members of the jury can review the video at trial and draw their own conclusions about what it depicts. In other words, the lay opinions offered by [the experts] as to their perceptions of [the] actions in the video would not be helpful to the jury because **the jury will be perfectly capable of watching the video and reaching an independent conclusion based on the evidence presented**.

*Id.* (emphasis added).

The same can be said for all the material Mr. Foster reviewed. He relied entirely upon material produced in discovery to create his report. (Report, 4-5) Every single item identified in Mr. Foster's report was produced in discovery or pursuant to a subpoena in this case. (Report, 4-5). In fact, Mr. Foster's entire discussion of Taser practice in his report is lifted verbatim from the Taser warnings that he

received. (Report, 8, Foster 164:5-166:5).[5] He is simply regurgitating and arguing purely factual material that can be presented to a jury. That material can be submitted as evidence to a jury and argued about by lawyers. *Frazier*, 387 F.3d at 1262–63 ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."). Mr. Foster's opinions and interpretation of the material are not first-hand knowledge, not helpful, and invade the province of the jury. His testimony and report should be excluded.

### 3.    Mr. Foster's report did not comply with Fed. R. Civ. P. 26.

Finally, Mr. Foster's report should be excluded because it did not comply with the requirements of Federal Rule 26(a)(2)(B). An expert's report must contain, among other things: "a complete statement of all opinions the witness will express and the basis and reasons for them;" and "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." *Id.*

First, Mr. Foster's Report is not complete. He testified in his deposition about the identity of another case for which he was retained and provided an expert

---

[5] Mr. Foster's logical conclusions are also concerning. After listing all of the attempted uses of Taser during the event with time stamps indicating exactly when they occurred, he argued that the officers failed to follow taser warnings because "Multiple Tasers *at the same time* could have cumulative effects and result in increased risk." (Report, 8) (emphasis added). The time stamps clearly identify Tasers were not used "at the same time."

deposition which was not included in his report. (Foster 64:16-66:23). In addition, he provided opinions in his report which he admitted were the opposite of the opinions provided in his testimony. (Foster 176:11-177:1). He has yet to update the litigants regarding any of these issues.

Even more significantly, Mr. Foster was prompted at his deposition to provide a number of opinions which were not contained in his report. For instance, at the urging of Plaintiffs' counsel, Mr. Foster testified that, in his experience, officers were required to review inmate medical information. (Foster 197:8-15). He also testified that inmates who tested positive for drugs or were suicidal should receive special treatment. (Foster 197:20-15). He went on to testify about body cameras. (Foster 199:14-202:23). Mr. Foster then testified about whether Mr. May was a threat based on Mr. Foster's experience and understanding of the law. (Foster 204:11-18). Mr. Foster offered thoughts on the actions of Defendant Derrick Paige who was not identified in his report. (Foster 213:15-214:7). Mr. Foster also offered testimony about other officers, after admitting the he was not aware that they were involved in this case. (Foster 214:9-215:1). Immediately after this testimony, Mr. Foster affirmed that his report contained no opinions about the topics that he had just testified about. (Foster 216:21-218:25). None of the opinions offered during Plaintiffs' counsel's inquiry were addressed in Mr. Foster's expert report and, frankly, there is no basis to support any of his "volunteer" opinions.

Plaintiff's failure to disclose the foregoing subject matter in their report is a basis for excluding the report. In the event the report is not excluded and Mr. Foster is permitted to testify as an expert, any testimony on these additional subjects should be excluded. Fed. R. Civ. P. 26(a)(2)(B)(i) requires that expert reports include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i) "Rule 26 ... is intended to provide opposing parties "reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008).

Mr. Foster's failure to include these opinions and testimony in his report warrants their exclusion. Under Fed. R. Civ. P. 37, when a party fails to provide information as required by Rule 26(a), the evidence is automatically excluded unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The non-disclosing party (here Plaintiffs) bears the burden of proving that the violation was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821, 824 (11th Cir. 2009).

In this case, Mr. Foster offered new expert cases and new opinions that were only offered during his deposition. He has never provided them or any basis for them in an updated report. At this point, months after the disclosure deadline, those

opinions represent just one more reason why his testimony is unqualified, unreliable and unhelpful. These new opinions should all be excluded.

## V.     CONCLUSION

Plaintiffs proffered expert, Randy Foster, is not qualified to offer opinions on the use of Tasers, OC spray, or transport chairs because his training is no greater, no more current, and in some cases less qualified than any of the Defendants. He is not qualified to offer opinions on the actions of custodial officers in Georgia because he has never worked directly with inmates in a custodial setting and has provided no custodial standards of care or references. He is not qualified to offer legal opinions because he has no legal training and has not identified any legal standards.

There is no link between the limited sample of facts that Mr. Foster reviewed and his ultimate conclusions. Therefore, those ultimate conclusions are unreliable. Further, Mr. Foster's opinions are not helpful because some invade the province of the jury, and the rest are simply his interpretation of the same evidence that a jury is capable of reviewing. Finally, Mr. Foster's expert report is incomplete and inconsistent with his testimony. For all of these reasons, Mr. Foster's report and this testimony should be excluded from this case.

Respectfully submitted, this 27th day of August, 2021.

**OFFICE OF THE FULTON COUNTY ATTORNEY**

Kaye Woodard Burwell
Interim County Attorney
Georgia Bar No. 775060

Steven E. Rosenberg
Deputy County Attorney
Georgia Bar No. 614560

***/s/ Jonathan Loegel***
Jonathan D. Loegel
Assistant County Attorney
Georgia Bar No. 755706
jonathan.loegel@fultoncountyga.gov

Attorneys for the Fulton County Sheriff's Officer
Defendants

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 3048
Atlanta, Georgia 30303
404-612-0246 (office)
404-730-6324 (facsimile)

26

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| The Estate of Antonio Devon May, et, al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 1:19-CV-02440-TWT |
| v. | ) ) | |
| Jason Roache, Derrick Paige, Jamel Goodwine, William Whitaker, Aaron Cook, Omar Jackson, Jermaine Copeland, Kenesia Stowder, Guito Delacruz, Naphcare, Inc., and Travis Williams, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

THIS CERTIFIES that I have presented this document in Times New Roman, 14 point type, in accordance with L.R. 5.1(C), and have not exceeded the twenty-five (25) page limit (not inclusive of the Certificate of Service) pursuant to L.R. 7.1(D), and that I have electronically filed the foregoing **BRIEF IN SUPPORT OF MOTION TO EXCLUDE OPINION TESTIMONY OF RANDY FOSTER** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

This 27th day of August, 2021.

*/s/ Jonathan Loegel*
Jonathan D. Loegel

27

Assistant County Attorney
Georgia Bar No. 755706
jonathan.loegel@fultoncountyga.gov

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W.
Suite 4038
Atlanta, Georgia 30303
(404) 612-0267 (office)
(404) 730-6324 (facsimile)